David J. Jordan (1751)
djordan@foley.com
David L. Mortensen (8242)
dmortensen@foley.com
Euigin Kim Pace (19644)
gpace@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: (801) 401-8900

Tyson D. Smith (TX Bar #24079362) (*Pro Hac Vice*)
tsmith@pirkeybarber.com
Stephen P. Meleen (TX Bar #00795776) (*Pro Hac Vice*)
smeleen@pirkeybarber.com
Ryan J. Miller (TX Bar #24131514) (*Pro Hac Vice*)
rmiller@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
Telephone: (512) 322-5200

*Attorneys for Intellectual Property Reserve, Inc.
and The Church of Jesus Christ of Latter-day Saints*

**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INTELLECTUAL RESERVE, INC., a Utah Non-Profit Corporation; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation Sole,<br><br>Plaintiffs,<br><br>v.<br><br>OPEN STORIES FOUNDATION, an Arizona Non-Profit Corporation; JOHN P. DEHLIN, an individual,<br><br>Defendants. | **RESPONSE IN OPPOSITION TO MOTION TO INTERVENE OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE AMICUS CURIAE BRIEF**<br><br>Civil Action No. 2:26-cv-00321<br><br>The Honorable Judge Jared C. Bennett |

4916-0197-5472.1

Plaintiffs Intellectual Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints, by and through their counsel, file this Response in Opposition to Motion to Intervene or, in the Alternative, for Leave to File Amicus Curiae Brief:

### INTRODUCTION

David Scott Taylor, also known as Ogimaa Songab Midegah Ogichidaa Zozep Anishaa Gautawaewauwissoowin (Senior Chief) Anishinaabe 8th Fire Traditional Governance Lodge Treaty Chief and Authorized Custodial Representative ("Movant"), filed his motion to intervene on May 8, 2026.[1]

Movant seeks to intervene based on his expressed concerns about the potential interaction between trademark law and historical or religious discourse but identifies no legally cognizable interest of his own that will be adjudicated in this action. This case concerns only whether Defendants have violated the Lanham Act. Any judgment will not affect Movant's asserted concerns.

Moreover, to the extent that Movant's arguments would require this Court to determine whether The Book of Mormon is a historical record and whether Mormon was a historical person, Movant's position cannot be adjudicated in a secular court. The church autonomy doctrine requires that this Court "decline [Movant's] invitation to 'enter the forbidden domain' of assessing the 'truth or falsity' of religious beliefs and doctrine." *Gaddy v. Corp. of the President of The Church of Jesus Christ of Latter-day Saints*, 148 F.4th 1202, 1213 (10th Cir. 2025) (citing *Ballard v. U.S.*, 322 U.S. 78, 87 (1946) (cleaned up)).

For these reasons, his motion should be denied.

---

[1] Although Movant requests permission file an amicus brief as an alternative to intervening, any request to file an amicus brief is premature as there is no motion to support or oppose. *See* DUCivR 7-6(e). Accordingly, the Church will treat Movant's motion only as one to intervene.

## BACKGROUND

On April 17, 2026, plaintiffs Intellectual Reserve, Inc., and The Church of Jesus Christ of Latter-day Saints (collectively, the "Church") filed the underlying lawsuit against Open Stories Foundation and John Dehlin ("Defendants"). The complaint alleges that Defendants, which operate a podcast under the name and mark MORMON STORIES, have infringed on the Church's federally registered trademarks. (Compl. ¶ 1.) As the complaint details, the term "MORMON" is commonly associated with the Church. (*Id.* ¶¶ 1, 17.) The Church has consistently used other marks incorporating the term MORMON, including (among others) "BOOK OF MORMON STORIES," "BOOK OF MORMON," and "BOOK OF MORMON VIDEOS." (*Id.* ¶ 15.)

The Church owns federally registered trademarks for the marks "MORMON," "BOOK OF MORMON," "BOOK OF MORMON STORIES," "MORMON MESSAGES," "MORMON CHANNEL," "MORMON TABERNACLE CHOIR," "BOOK OF MORMON VIDEOS," "MORMON BATALLION," and "MORMON HANDICRAFT." (*Id.* ¶ 28.) The complaint details how Defendants' MORMON STORIES branding and use of Church copyrighted images to promote their podcast has caused and will continue to cause confusion. Movant now seeks to intervene in that dispute.

The association between the term "Mormon,", the "Book of Mormon," and the Church arises because "the Church and its members hold The Book of Mormon as a sacred companion text of scripture together with the Bible." (*Id.* ¶ 17.)  The Church believes its founding prophet, Joseph Smith, translated The Book of Mormon from records compiled by an ancient prophet named Mormon. The Church maintains that The Book of Mormon is an ancient volume of scripture containing a factual account of ancient peoples in the Americas.

For some time, Movant has claimed that he has ancient Native American artifacts that

prove the validity of The Book of Mormon as a historical document. He has been active online in asserting these claims. Movant seeks to intervene to argue that the terms "Mormon" and "Book of Mormon" are not protectable because there was, in fact, an ancient prophet named "Mormon" who wrote "The Book of Mormon," and therefore these terms "predate" the Church and are of religious and historical significance. (*See* Mot. at 1, 3.) Thus, Movant claims that "granting exclusive trademark enforcement over these terms would require treating Indigenous history"—i.e., the history recorded in The Book of Mormon—"as proprietary commercial speech."

In short, Movant contends these terms cannot be protected as intellectual property because they refer to a real historical person and a historical artifact. Movant claims he can best present this argument to the Court because of his asserted "custodial" capacity over indigenous historical records and faith traditions. (*Id.* at 2.) He claims the Church's trademark claims will interfere with these custodial rights. (*Id.* at 10.)

## **STANDARD**

In a federal lawsuit, a movant has a right to intervene if a federal statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a)(1). Alternatively, a movant may intervene only if it establishes "(1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). A court may allow at its discretion permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

## ANALYSIS

### I.    Movant Has Not Asserted Grounds for Mandatory Intervention

#### a.    *Movant has no federal statutory right to intervene*

Movant has not shown grounds for intervention under Rule 24 of the Federal Rules of Civil Procedure. Rule 24 requires a Court to permit intervention where the movant "is given an unconditional right to intervene by federal statute." Fed. R. Civ. P. 24(a)(1). Movant claims he represents "legally protectable treaty-era and constitutional interests." (*Id.* at 4.) But he does not identify where such a right to intervene comes from. If he claims it is any of the statutes, treaties, or constitutional provisions he references, he fails to make that showing.

In various places in the motion, Movant cites the American Indian Religious Freedom Act ("AIRFA"), the First Amendment, the Lanham Act, and federal treaties including the Harmar treaty. AIRFA does not have even a "hint of any intent to create… any judicially enforceable individual rights." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988). The First Amendment certainly contains no right to intervene. U.S. CONST. AMEND. I. Nor do the Lanham Act or the Harmar treaty. *See* 15 U.S.C.A. 22 § 1051-1141; Treaty with the Six Nations, Jan. 9, 1789, 7 Stat. 33. Movant has not pointed to any provision in these statutes or treaties that grants him a right to intervene. Thus, this Court should not allow intervention under any statutory, constitutional, or treaty right.

#### b.    *Movant does not claim any property interest in the trademarks*

Movant's claimed "interest," to the extent it can be discerned, appears to stem from his belief that the trademark "MORMON" should be freely available for him (and perhaps anyone else) to use. Movant advances a series of defenses to trademark infringement and legal arguments about the protectability of the term MORMON, none of which articulate any cognizable interest.

4

**First**, Movant does not identify any "interest" within the meaning of Rule 24. Rule 24(a)(2) requires the Court to allow intervention where a movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). But Movant does not and cannot claim that he owns a property interest in the terms "MORMON" or "BOOK OF MORMON." The interest must be direct, substantial, and legally protectable. *See Garfield Cnty., Utah v. Biden*, Nos. 4:22-cv-00059-DN-PK, 4:22-cv-00060-DN, 2023 WL 2561539, at *3–4 (identifying the direct, substantial, and legally protectable interest requirement).

In fact, Movant's arguments are incompatible with such a claim. Movant claims these terms cannot legally be protected as trademarks. (*Id.* 8.) He asserts that their historical and religious significance require they be part of the public domain. (*Id.* at 7.) Even if this were legally correct (and it is not), he would still have no recognizable property interest because "[o]wnership by or in trust for the public does not create ownership interest in individual citizens and taxpayers." *Linning v. U.S.*, 328 F.2d 603, 604 (5th Cir. 1964) (denying intervention by taxpayers in government condemnation action for condemnation of public lands). To satisfy Rule 24, Movant must claim he has an individual property interest in the trademarks. He does not.

To be sure, treaty interests may rise to the level of property interests for intervention purposes. *See U.S. v. State of Wash.*, 86 F.3d 1499 (9th Cir. 1996); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 152 F.R.D. 583 (D. Minn. 1993); *U.S. v. State of Or.*, 122 F.R.D. 571 (D. Or. 1988), *aff'd*, 913 F.2d 576 (9th Cir. 1990). But in those cases, the treaties granted native tribes fishing or hunting rights—quintessential property rights. Here, Movant claims that no such right can exist, citing general policy in favor of preserving indigenous identity. (*Id.* at 9.) Because

5

he fails to assert a property right in the trademarked terms, allowing intervention is not mandatory.

**Second,** Movant asserts that terms with historical or religious significance cannot be protected as trademarks.[2] But that is incorrect. The Lanham Act does not categorically limit trademark rights in or preclude registration of terms with such significance.  For example, 15 U.S.C. § 1052(a) bars marks that falsely suggest a connection with persons, institutions, beliefs, or national symbols, or are deceptive, but does not bar registration without such false suggestion of connection or deception, and 15 U.S.C. 1052(c) bars registration of marks consisting of a name only where the mark identifies a living individual who has not provided written consent. 15 U.S.C. § 1052(a) and (c). In fact, there are numerous examples of trademarks incorporating religious or historically significant terms because these terms can and do act as source identifiers.[3] Moreover, the Church's federal registrations carry a presumption of validity and ownership, 15 U.S.C. § 1115(a), and Movant identifies no basis under the Lanham Act to challenge them. Though trademark law does not grant a monopoly over history, it does prohibit confusing source-identifying uses.

Movant also seems to argue that allowing Plaintiffs to enforce the MORMON marks would inhibit his religious freedom. Setting aside that this case does not involve any challenge to any conduct by Movant, it is well established that granting and enforcing trademark rights under content neutral secular principles does not conflict with the First Amendment. *See, e.g.*, *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 409 (6th Cir. 2010); *see also Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023) ("We hold only that . . . .when

---

[2]   The Motion cites a number of cases, most of which do not stand for the proposition for which they are asserted and are at best only tangentially related to the issues in the motion.
[3] For example, TESLA (U.S. Reg. No. 4443472), LINCOLN (U.S. Reg. No. 0511662), NAPOLEON (U.S. Reg. No. 5891515), and COLUMBUS (U.S. Reg. No. 5943597) are all active trademark registrations that incorporate names of historical figures.

the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark, [t]hat kind of use falls within the heartland of trademark law, and does not receive special First Amendment protection.").  Similarly, contrary to Movant's claims, trademark rights do not remove terms from public discourse, but instead protect against confusingly similar uses of source identifiers. *Jack Daniel's Props., Inc.*, 599 U.S. at 159 ("[T]he trademark law generally prevails over the First Amendment when another's trademark (or a confusingly similar mark) is used without permission as a means of source identification" (some quotations omitted)).

**Third**, Movant's claimed interests are irrelevant to this proceeding. This proceeding does not involve any challenge to his use of the term "Mormon."  Any fair use or priority arguments he may have are case-specific and have no bearing on Defendants or any of Defendants' defenses. Similarly, to the extent Movant suggests he has any proprietary rights because Indigenous use of "Mormon" predates the Church's use of the term (which, as discussed below, is non-justiciable), these rights would be irrelevant to this proceeding (and thus do not establish any interest justifying intervention). *See Ute Distrib. Corp. v. Norton*, 43 F. App'x 272, 278–79 (10th Cir. 2002) (denying intervention where proposed intervenor sought to inject collateral issues beyond the dispute before the court); *see also Jus tertii is not a defense*, 4 McCarthy on Trademarks and Unfair Competition § 31:160 (5th ed.).

Movant also fails to identify any way in which this lawsuit could impact any interest Movant claims to have," including in the term "Mormon." No issue or claim preclusion would pertain to Movant if Plaintiffs were successful in this case. Because Movant is not a party in this case, an injunction would not impact Movant's rights or obligations. Movant has failed to explain how this case could impede his ability to engage in historical or religious discourse or otherwise

affect his ability to assert defenses, such as fair use, in the future. The case does not involve physical property or finite resources that could be irreparably changed as the result of this lawsuit. Thus, even if Movant has some interest in the mark MORMON, this case will not, as a practical matter, impair or impede those interests.

       *c.      Movant has not established standing*

It is unclear exactly what relief Movant is seeking. Movant has not identified an actual or imminent, not conjectural or hypothetical injury in fact. Accordingly, Movant lacks standing. *Safe Streets All. v. Hickenloope*r, 859 F.3d 865, 912 (10th Cir. 2017) ("We also note that Rule 24(a)'s provisions cannot remove the Article III hurdle that anyone faces when voluntarily seeking to enter a federal court . . . .").

## II.      The Court Should Deny Permissive Intervention

       *a.      Movant does not have a justiciable claim or defense common with the main action*

Next, Movant claims this Court should grant permissive intervention "because Movant's participation will assist the Court by addressing threshold legal limits." Movant seems to be saying the Court should permit intervention because he has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). However, it is unclear what claim or defense Movant is claiming he shares with the Defendants. And this Court cannot entertain the issues he proposes to raise because it would entangle the Court with religious questions. Because the questions of law and fact relevant to any claim or defense Movant might raise are nonjusticiable, Movant has no claim or defense that shares a common question of law or fact with the issues in this action. Movant has not met the threshold burden for permissive intervention.

       *b.      Allowing intervention will not promote judicial efficiency.*

Even if this Court "determines that the initial conditions for permissive intervention… are met," it should still deny permissive intervention. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). This Court "is… entitled to consider other factors in making its discretionary decision on the issue of permissive intervention." *Id.* These factors include "the nature and extent of the intervenors' interest… the legal position they seek to advance, and its probable relation to the merits of the case… whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit." *Id.* All this is meant "to promote the efficient and orderly use of judicial resources." *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009).

These factors weigh heavily against permissive intervention. Allowing Movant to intervene will bog down this case with religious questions. It will allow a confusing legal position to enter the lawsuit through a pro se litigant without contributing to the development of fact or law. Lastly, Movant does not have a legally cognizable interest in the trademarks, and the existing parties can adequately protect any legal claim he might make or interest he might assert. *See Kane Cnty., Utah v. U.S.*, 597 F.3d 1129, 1136 (10th Cir. 2010) (affirming district court's denial of because intervenors would not significantly contribute to full development of the underlying issues).

**III.     Granting the Motion Would Violate the Church Autonomy Doctrine**

"[T]he jurisdiction of civil courts being confined to 'civil actions,' they may not take cognizance of purely spiritual or ecclesiastical questions." *Watson v. Jones*, 80 U.S. 679, 710 (1872). This includes "religious claims about history" because in those situations "facts and beliefs are inextricably intertwined" *Gaddy*, 148 F.4th at 1214 (internal quotation marks omitted).

9

Movant argues the Court should allow him to intervene so he can "represent Indigenous custodial, governance, and treaty-protected interests in historical records and faith traditions." (*Id.* 2.) In short, he seeks to protect those "faith traditions" as they may relate to the "use of the terms 'MORMON' and 'BOOK OF MORMON.'" (*Id.* at 1.)

One of the fundamental religious tenets of The Church of Jesus Christ of Latter-day Saints is that the Book of Mormon is a record of God's dealings with ancient inhabitants of the Americas. One of those ancient inhabitants was a prophet-historian named Mormon. Although the Church teaches and believes this is true, it is ultimately a "religious claim[] about history." *Gaddy,* 148 F.4th at 1214., While Movant may share that belief, the Church recognizes that this Court is prohibited from addressing that issue, just as it is prohibited from determining "whether Jesus Christ walked on water or Muhammed communed with the archangel Gabriel." *Gaddy,* 148 F.4th at 1213 (internal quotation marks omitted). Because protecting the Movants claimed interests would require this Court to overstep that constitutional boundary, the Motion should be denied.

## CONCLUSION

There is no reason to allow Movant to intervene when he will not contribute to the justiciable issues in this lawsuit. He also does not meet the threshold requirements for permissive intervention. The motion should be denied.

DATED:                                    FOLEY & LARDNER LLP

                                          */s/ David J. Jordan*
                                          David J. Jordan
                                          David L. Mortensen
                                          Euigin Kim Pace

                                          *Attorneys for Intellectual Property Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints*

10