FILED
2026 May 30
CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

THE CHURCH OF JESUS CHRIST
OF LATTER-DAY SAINTS,
Plaintiff,

v.

JOHN DEHLIN;
OPEN STORIES FOUNDATION,
Defendants.

Case No. 2:26-cv-00321

---

## REPLY IN SUPPORT OF MOTION TO INTERVENE OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE AMICUS CURIAE BRIEF

---

## <u>INTRODUCTION</u>

Movant appears in a representative custodial capacity as a Traditional Chief and religious leader within the Midewiwin, an Indigenous governance and ceremonial institution. Movant's participation is limited to addressing the legal treatment of historically and religiously referential terminology at issue in this action. That custodial role is directly implicated where, as here, Plaintiffs seek to enforce exclusive trademark rights over terms that function within Movant's tradition as referential identifiers of historical and religious record.

Plaintiffs' opposition attempts to recast this case as a narrow dispute concerning branding and consumer confusion. But Plaintiffs' own Complaint places far broader issues before the Court: whether the terms "MORMON" and "BOOK OF MORMON" function as exclusive institutional source identifiers subject to enforcement under the Lanham Act. Plaintiffs simultaneously assert that these terms denote a historical narrative and religious record involving ancient peoples and a historical figure while also claiming they are exclusive marks uniquely associated with Plaintiffs.

That dual characterization creates a threshold legal issue squarely within the Court's jurisdiction: whether historically and religiously referential terminology may be treated as proprietary trademarks when used descriptively, referentially, or in protected expression.

Movant does not ask the Court to adjudicate theological truth. Movant relies solely on Plaintiffs' own pleadings. The issue presented is one of Lanham Act scope and constitutional limits, not religious doctrine.

## I. THIS ACTION PLACES THE TERMS THEMSELVES AT ISSUE

Plaintiffs contend this case concerns only Defendants' allegedly confusing branding. That framing is inconsistent with their own allegations.

Plaintiffs assert ownership of a family of federally registered marks incorporating "MORMON" and "BOOK OF MORMON," and allege these terms function as source identifiers uniquely associated with Plaintiffs. Their enforcement theory is not confined to logos or stylized presentation, but extends to the terms themselves as identifiers of origin.

Accordingly, this case necessarily requires the Court to determine:

- whether these terms function as exclusive source identifiers; or

- whether they remain descriptive, referential, or part of broader religious and historical discourse.

That determination extends beyond the immediate parties. A ruling affirming Plaintiffs' position would define the permissible scope of use of these terms in religious, historical, and media contexts.

## II. MOVANT ASSERTS A LEGALLY PROTECTABLE INTEREST UNDER RULE 24

Movant does not assert ownership of the disputed terms. Movant's interest is instead:

the preservation of lawful, non-confusing, descriptive and referential use of historically and religiously significant terminology within protected discourse.

In his custodial representative capacity, Movant engages in the preservation, discussion, and transmission of historical and religious narratives in which the terms "Mormon" and "Book of Mormon" are used referentially and descriptively to identify subject matter, not source.

Rule 24 does not require ownership of disputed property where a movant's ability to engage in lawful conduct may be impaired by the disposition of the action. Courts recognize that a protectable interest exists where the outcome may practically affect a movant's conduct or legal position [1], [2].

Where enforcement of trademark rights threatens speech or expressive conduct, courts further recognize a cognizable interest sufficient to justify participation [3].

Here, Plaintiffs' theory would extend trademark enforcement into domains of religious expression and historical reference. That is a direct, substantial, and legally protectable interest.

## III. DISPOSITION OF THIS ACTION MAY IMPAIR MOVANT'S INTERESTS

The impairment requirement under Rule 24 is practical rather than strictly formal. A movant need only show that the disposition of the action may, as a practical matter, impair the movant's ability to protect his interests [1].

The impairment here is not theoretical. It arises from Plaintiffs' assertion that these terms function as exclusive identifiers within the very domains—religious discourse, historical narrative, and media expression—in which Movant operates.

If Plaintiffs' theory is accepted, the result will be:

- expansion of trademark protection into historically and religiously referential terminology,

- narrowing of permissible nominative and descriptive use, and

- creation of precedent supporting enforcement against third parties in similar contexts.

Courts recognize that such practical and precedential effects suffice to establish impairment under Rule 24 [2].

Movant's interest is not abstract. In his representative custodial role, Movant engages in the transmission and preservation of narratives in which these terms are used non-commercially to describe subject matter. Plaintiffs' enforcement theory places those uses at risk by asserting exclusivity not merely in branding, but in the terminology itself when used in overlapping expressive contexts.

This constitutes a direct and practical impairment.

## IV. MOVANT'S POSITION DOES NOT REQUIRE ADJUDICATION OF RELIGIOUS TRUTH

Plaintiffs' invocation of the church autonomy doctrine is misplaced.

Movant does not request that the Court determine:

- whether any religious belief is true, or

- whether any historical narrative is accurate.

Instead, Movant relies entirely on Plaintiffs' own characterizations. The Court may consider how the terms are described and used without adjudicating their truth.

The issue presented is purely legal:

whether terms described as historical and religious subject matter may be enforced as exclusive source identifiers in a manner that restricts lawful referential or descriptive use.

Courts routinely apply trademark law without assessing the truth of underlying expression, as the Lanham Act concerns source identification, not content validity [4].

Moreover, trademark law must be applied in a manner consistent with the First Amendment, particularly where the use at issue is expressive or referential [5], [6].

Accordingly, resolving the scope of trademark rights here does not require the Court to enter any forbidden theological domain.

## V. PLAINTIFFS' THEORY CREATES A THRESHOLD LANHAM ACT ISSUE

Plaintiffs' position presents a core tension within trademark law.

They assert simultaneously that:

- the terms at issue refer to historical narratives and religious subject matter; and

- those same terms function as exclusive institutional identifiers.

However, the Lanham Act protects indicators of source, not the underlying subject matter of history, religion, or belief [4].

Where a term is used to refer to the subject itself—particularly where no substitute exists—courts recognize nominative fair use and protect such use even in the face of alleged confusion [7].

Trademark law likewise cannot be expanded to suppress discussion, commentary, or referential use of matters of public interest without raising serious First Amendment concerns [5].

Plaintiffs' theory would extend trademark control into precisely those domains—historical narrative, religious discourse, and expressive use—where the law imposes clear limits.

Movant's participation would assist the Court in applying those limits.

## VI. AT MINIMUM, AMICUS PARTICIPATION IS APPROPRIATE

Even if intervention is denied, the Court should permit amicus participation.

Movant does not seek to expand factual disputes or delay proceedings. Instead, Movant provides legal analysis not fully presented by the parties, including:

- constitutional constraints on trademark enforcement,

- the distinction between subject-matter reference and source identification, and

- the implications of extending trademark control over historically and religiously referential terms.

Courts routinely permit amicus participation where a party offers perspective on broader legal implications not fully presented by the litigants [8].

## CONCLUSION

This case presents more than a dispute over branding. It requires the Court to determine whether terms described as historical and religious in nature may be enforced as exclusive trademarks in a manner that affects broader public discourse.

Movant has demonstrated:

- a legally protectable interest under Rule 24,

- a practical risk of impairment, and

- the ability to assist the Court without entangling it in non-justiciable matters.

Movant respectfully requests that the Court:

- grant the Motion to Intervene for the limited purposes stated; or

- in the alternative, grant leave to file an amicus curiae brief.

Respectfully submitted,

05/30/2026

David Scott Taylor
Ogimaa Songab Midegah Ogichidaa Zozep Anishaa
Midewiwin Midegag


159 Ulmer Road
Kooskia, Idaho 83539

# REFERENCES

[1] Kane County, Utah v. United States, 928 F.3d 877 (10th Cir. 2019) — holding that Rule 24 requires only a practical interest that may be impaired by the disposition of the action, not a strict property right.

[2] Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, 100 F.3d 837 (10th Cir. 1996) — recognizing that impairment under Rule 24 is satisfied where a decision may have a practical precedential effect on a movant's interests.

[3] Utah Lighthouse Ministry v. Foundation for Apologetic Information & Research, 527 F.3d 1045 (10th Cir. 2008) — applying First Amendment principles and nominative fair use in a religious trademark context, emphasizing limits on trademark enforcement in expressive use.

[4] Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003) — clarifying that the Lanham Act protects source identification and does not grant ownership over the underlying content, ideas, or historical subject matter.

[5] Cardtoons, L.C. v. Major League Baseball Players Ass'n, 95 F.3d 959 (10th Cir. 1996) — holding that trademark law must yield to First Amendment protections where enforcement would suppress expressive speech on matters of public interest.

[6] Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989) — establishing that use of a mark in expressive works is protected unless it has no artistic relevance or explicitly misleads as to source.

[7] KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004) — confirming that descriptive and nominative use of terms remains lawful even where some degree of confusion may exist.

[8] Neonatology Associates, P.A. v. Commissioner, 293 F.3d 128 (3d Cir. 2002) — recognizing the appropriateness of amicus participation where a party provides useful legal perspective beyond the arguments of the litigants.