Mark A. Miller (#9563)
miller.mark@dorsey.com
Elliot Hales (#16684)
hales.elliot@dorsey.com
Olivia McQuarrie (#19621)
mcquarrie.olivia@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373

Mike Keyes (pro hac vice)
keyes.mike@dorsey.com
**DORSEY & WHITNEY LLP**
701 Fifth Ave., Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-8800
Facsimile: (206) 903-8820

Elissa Brockbank Reese (pro hac vice)
ereese@potomaclaw.com
**POTOMAC LAW GROUP, PLLC**
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006
Telephone: (202) 558-5557
Facsimile: (202) 318-7707

Ryan E. Hatch (pro hac vice)
ryan@hatchlaw.com
**HATCH LAW PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Telephone: (310) 279-5079
Facsimile: (310) 693-5328

*Attorneys for Defendants Open Stories Foundation and John P. Dehlin*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| INTELLECTUAL RESERVE, INC., a Utah non-profit corporation; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, <br><br> Plaintiffs, <br><br> vs. <br><br> OPEN STORIES FOUNDATION, an Arizona non-profit corporation; JOHN P. DEHLIN, an individual, <br><br> Defendants. | **MOTION TO DISMISS** <br><br> Civil No. 2:26-CV-00321 <br><br> Judge Robert J. Shelby <br> Magistrate Judge Jared C. Bennett |

**TABLE OF CONTENTS**

I.      PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY THE
        FIRST AMENDMENT...........................................................................................1

        A.      Dismissal is Warranted Under *Rogers*.............................................................2

        B.      Dismissal is also Warranted Under the More Stringent *Stouffer*
                Factors.................................................................................................................7

        C.      The *Jack Daniel's* Decision Does Not Preclude Dismissal Under
                *Rogers* or *Stouffer* .......................................................................................11

II.     PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES. ...............15

III.    THE CHURCH FAILS TO PROVIDE A CLEAR PICTURE OF ITS
        TRADEMARK THEORIES...............................................................................23

IV.     PLAINTIFFS' COPYRIGHT CLAIM SHOULD BE DISMISSED FOR
        FAILURE TO PLEAD WHEN THE ALLEGED INFRINGEMENTS
        OCCURRED.......................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albion Int'l, Inc. v. Am. Int'l Chem., Inc.*,
No. 2:07-cv-0994 CW, 2012 WL 3776866 (D. Utah Aug. 30, 2012) ...............................16, 20

*Argus Research Grp., Inc. v. Argus Media, Inc.*,
562 F. Supp. 2d 260 (D. Conn. 2008) .....................................................................................19

*Ariix LLC v. Usana Health Sciences, Inc.*,
No. 2:22-cv-00313, 2023 WL 2574319 (D. Utah Mar. 20, 2023) ...........................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................1

*Biodiversity Conservation All. v. Jiron*,
762 F.3d 1036 (10th Cir. 2014) ...................................................................................15, 16, 20

*Boyd v. Yardley*,
No. 2:18-cv-132, 2019 WL 7505682 (D. Utah Dec. 12, 2019) ..............................................25

*Bridgestone/Firestone Research, Inc. v. Auto. Club de l'Ouest de la France*,
245 F.3d 1359 (Fed. Cir. 2001)....................................................................................19, 20, 21

*Chattanoga Mfg., Inc. v. Nike, Inc.*,
301 F.3d 789 (7th Cir. 2002) ....................................................................................................21

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
785 F. Supp. 3d 1009 (D. Utah 2025)....................................................................................1, 4

*Cobe Labs., Inc. v. Baxter Healthcare Corp.*,
34 U.S.P.Q.2d 1472 (D. Colo. 1994) .......................................................................................19

*Cricut, Inc. v. Enough for Everyone, Inc.*,
No. 2:21-cv-00601-TS-DAO, 2024 WL 2134776 (D. Utah May 13, 2024) ...........................19

*Down to Earth Organics, LLC v. Efron*,
No. 22-cv-06218-NSR, 2024 WL 1376532 (S.D. N.Y. Mar. 31, 2024)............................12, 13

*Est. of Lockett v. Fallin*,
841 F.3d 1098 (10th Cir 2016) ..................................................................................................4

*Ga.-Pacific Corp. v. Great Plains Bag Co.*,
   614 F.2d 757 (C.C.P.A. 1980) .................................................................................................22

*Glenn v. First Nat'l Bank*,
   868 F.2d 368 (10th Cir. 1989) ................................................................................................23

*GTE Corp. v. Williams*,
   649 F. Supp. 164 (D. Utah 1986) ......................................................................................19, 22

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F.3d 813 (7th Cir. 1999) ..............................................................................................20, 22

*Israel v. Strassberg*,
   No. 2:15-cv-741 TS, 2018 WL 4290394 (D. Utah Sept. 7, 2018)...........................................14

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
   599 U.S. 140 (2023)......................................................................................................11, 12, 13

*Jenco, LC v. Valderra Dev.*,
   LLC, 2026 WL 575157 (D. Utah Mar. 2, 2026).....................................................................17

*Kars 4 Kids Inc. v. America Can!*,
   98 F.4th 436 (3rd Cir. 2024) ..................................................................................................15

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022).................................................................................................................14

*La Republique Francaise v. Saratoga Vichy Spring Co.*,
   191 U.S. 427 (1903).................................................................................................................20

*Lost Int'l, LLC v. Germanotta*,
   No. CV 25-0592 FMO, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025)...................................12

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) ...................................................................................................2

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014)................................................................................................................15

*Pfizer Inc. v. Astra Pharm. Prods., Inc.*,
   858 F. Supp. 1305 (S.D.N.Y. 1994).......................................................................................24

*Radiance Found., Inc. v. NAACP*,
   786 F.3d 316 (4th Cir. 2015) ..................................................................................................14

iv

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989)................................................................................. *passim*

*Scott v. Mego Int'l, Inc.*,
519 F. Supp. 1118 (D. Minn. 1981)....................................................................................24

*Snyder v. Phelps*,
562 U.S. 443 (2011)...........................................................................................................14

*Stouffer v. Nat'l Geographic Partners, LLC*,
400 F. Supp. 3d 1161 (D. Colo. 2019)................................................................... *passim*

*Stouffer v. Nat'l Geographic Partners, LLC*,
460 F.Supp.3d 1133 (D. Colo. 2020)..........................................................................8, 9, 10

*Strauss v. Angie's List, Inc.*,
No. 2:17-cv-02560-HLT-TJJ, 2019 WL 399910 (D. Kan. Jan. 31, 2019) ........................15, 23

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
875 F.3d 1192 (9th Cir. 2017) .............................................................................. *passim*

*UFO Magazine, Inc. v. Showtime Network, Inc.*,
No. 22-cv-078-NFD, 2022 WL 16644914 (D. Wyo. Nov. 3, 2022) .........................................2

*United States v. Rodriguez-Aguirre*,
264 F.3d 1195 (10th Cir. 2001) ........................................................................................19

*Waller v. City & Cty. of Denver*,
932 F.3d 1277 (10th Cir. 2019) .......................................................................................1, 5

*Wenger v. Stoss*,
2024 U.S. Dist. LEXIS 174495 (D. Kan. Sept. 25, 2024) .....................................................23

*Yeager v. Fort Knox Sec. Prods.*,
602 Fed. Appx. 423 (10th Cir. 2015)..................................................................................16

**Other Authorities**

First Amendment ................................................................................................... *passim*

D.U.Civ.R. 7-1(a)(6)........................................................................................................28

Fed. R. Evid. 201(b)-(d)....................................................................................................1, 4

Fed. R. Civ. Pro. 12(b)(6) .............................................................................................1, 13, 15, 23

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants John Dehlin and The Open Stories Foundation ("OSF") (collectively "Defendants") hereby move the Court to dismiss the claims of trademark and copyright infringement brought by Plaintiffs Intellectual Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints (collectively "Plaintiffs" or "the Church"). As set forth herein, Plaintiffs' claims under Counts I-IV are subject to dismissal on various, independent grounds, including the First Amendment, laches, failure to plead essential elements, and unreasonably vague pleading.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss, the "court must accept as true all well-pleaded factual allegations in a plaintiff's complaint and draw reasonable inferences based on those facts in the plaintiff's favor." *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F. Supp. 3d 1009, 1022 (D. Utah 2025). While the Court's focus remains on the pleaded allegations in the complaint, the Court may also consider public evidence subject to judicial notice under Fed. R. Evid. 201(b)-(d), *see id*. at 1026, n. 127, as well as materials referred to in the complaint that are central the plaintiff's claims, *see Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

## I.   PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Counts I-III of Plaintiffs' Complaint assert claims of trademark infringement under the Lanham Act, common, and state law based on Defendants' accused use of MORMON STORIES

1

as the title of their over-20-year-old podcast. Complaint ¶¶ 31-32, 59, 62, 65-66 (ECF 1). However, when trademark infringement claims are directed to "the title of an expressive work," federal courts have long balanced an accused infringer's First Amendment interests against the asserted trademark rights by applying a test developed by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), "to determine whether the Lanham Act applies." *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017). *See also Parks v. LaFace Records*, 329 F.3d 437, 448 (6th Cir. 2003) (collecting cases).

The Tenth Circuit has neither explicitly adopted nor rejected the *Rogers* test, but district courts in the Tenth Circuit have fashioned an analogous, more rigorous, test first articulated in *Stouffer v. Nat'l Geographic Partners, LLC*, 400 F. Supp. 3d 1161, 1179 (D. Colo. 2019). *See also UFO Magazine, Inc. v. Showtime Network, Inc.*, No. 22-cv-078-NFD, 2022 WL 16644914, at *5 (D. Wyo. Nov. 3, 2022) (applying *Stouffer* to dismiss with prejudice trademark infringement claims asserted against the title of a television series).

Under either the *Rogers* or *Stouffer* frameworks, the result is the same: Defendants' use of "Mormon Stories" as the title of their First Amendment-protected podcast series is inextricably intertwined with the non-commercial expressive content of the podcast itself, such that the First Amendment rightly places the claim decisively outside the reach of the Lanham Act.

### A. Dismissal is Warranted Under *Rogers*

In *Rogers*, the Second Circuit explored the interplay between First Amendment protections for expressive or artistic works—particularly the titles of such works—and trademark rights protected by the Lanham Act. *See Rogers*, 875 F.2d at 997-99. The court explained:

> Titles, like the artistic works they identify, are of a hybrid nature,
> combining artistic expression and commercial promotion. The title

2

> of a movie may be both an integral element of the filmmaker's expression as well as a significant means of marketing the film to the public. The artistic and commercial elements of titles are inextricably intertwined. Film-makers and authors frequently rely on word-play, ambiguity, irony, and allusion in titling their works. Furthermore, their interest in freedom of artistic expression is shared by their audience. The subtleties of a title can enrich a reader's or a viewer's understanding of a work. Consumers of artistic works thus have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression. For all these reasons, the **expressive element of titles requires more protection than the labeling of ordinary commercial products**.

*Id*. at 998 (emphasis added) ("Though consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products.").

Over the years, courts have applied *Rogers* to hold that the Lanham Act is inapplicable to use of alleged trademarks in connection with expressive works unless a defendant's use of the asserted mark (1) has no artistic relevance to the underlying work *whatsoever*, or (2) *explicitly* misleads consumers as to the source or the content of the work. *See Twentieth Century*, 875 F.3d at 1196 (quoting *Rogers*, 875 F.2d at 999) (emphasis added). Defendants' use of "Mormon Stories" as the title of a podcast produced by Defendant OSF, a non-profit organization, easily clears both hurdles and warrants First Amendment exemption from Plaintiffs' trademark claims.

**<u>*Rogers* Factor 1 – Artistic and Editorial Relevance</u>:** As the Complaint makes clear, Defendants' use of "Mormon" in their podcasts and websites, whether in the titles or the publications themselves, possesses far more than the requisite "minimal" artistic relevance. "[T]he cultural significance of a mark may often be relevant to the first prong of the *Rogers* test," because "[t]rademarks that transcend their identifying purpose are more likely to be used in artistically

3

relevant ways." *Id*. at 1198 (cleaned up). Moreover, "[a] mark that has no meaning beyond its source-identifying function is more likely to be used in a way that has 'no artistic relevance to the underlying work whatsoever.'" *Id*. (quoting *Rogers*, 875 F.2d at 999).

In this case, the word "Mormon" has a strong cultural significance far beyond any alleged source-identifying function claimed by the Church; it is used as a ubiquitous and descriptive reference to Mormonism writ large, including the history, traditions, culture, and people within Mormonism beyond just the Church itself. *See, e.g.*, Exhibit A.[1] For example, a 2011 article from *Newsweek* titled, "The Mormon Moment" discusses "Mormon faith," "Mormonism itself," "Mormon populations," "Mormon roots," and "Mormon tradition", stating that Mormonism "centers on the distinctive values and characteristics that have come to define Mormons outside the church walls—in their communities, in their careers, and in the culture at large." Ex. A, #1; *see also* Ex. A, #3 ("Why I Love Mormonism", *The New York Times*); Ex. A, #5 ("What do Mormons believe", *CNN*) (referring to the Church as "the largest Mormon denomination" and noting the Church has "requested people stop referring to church members as 'Mormons.'"). Indeed, the Church itself has publicly declared that "Mormon" is only a "nickname" for members

---

[1] Exhibit A lists examples of published articles demonstrating how the term "Mormon" is used. The Court may properly take judicial notice of these and other articles cited herein, "because their publication is not subject to reasonable dispute" and because they are being offered not for their truth but to illustrate how "Mormon" is used and publicly understood as a reference for Mormonism broadly. *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F. Supp. 3d at 1026, n. 127. *See also* Fed. R. Evid. 201(b)-(d) (stating the court "may judicially notice a fact that is not subject to reasonable dispute" and "is generally known within the trial court's territorial jurisdiction"); *Est. of Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir 2016) ("When courts have taken judicial notice of contents of news articles, they have done so for proof that something is publicly known, not for the truth of the article's other assertions.") (citation omitted).

of the Church and is "correctly used in proper names" or "when used as an adjective." *See* Ex. A, #7, #8.

As the Complaint asserts, beginning in 2005, Defendants spent more than 20 years using MORMON STORIES to signal the subject matter and content of their "religiously-themed podcast," which can take the form of personal interviews of people telling stories about their Mormon experiences, interviews of historians about stories from Mormon history, and sometimes just interactive commentary on Mormon-themed topics. *See* Complaint ¶¶ 31-32, 39, 41; Complaint Exhibit 2 (ECF 1-2). For example, the Complaint refers to episode 2073 of MORMON STORIES podcast, wherein Dehlin interviews Keira Shae about "her story of converting to the LDS Church as a teenager" and her efforts to "to live up to the expectations of being the 'perfect' Mormon wife and mother." Complaint ¶ 41; https://www.youtube.com/ watch?v=f44BIFvFtE0.[2] In episode 2020, Dehlin held a call-in show for people to discuss the topic: "Are Mormons Christians?"  Complaint Exhibit 2; https://www.youtube.com/watch?v=W-H-wcBqHVs. And in episode 1336, Dehlin interviews Mormon historian Shannon Caldwell Montez about the rise and fall of B.H. Roberts, former leader in the Church. *See* Complaint Exhibit 2; https://www.youtube.com/watch?v=MktPJzEhwkg.

The Complaint also shows that MORMON STORIES podcast is nationally recognized as a noteworthy source for examining Mormonism and Mormon culture, having been featured on

---

[2] Because the Complaint refers to these podcast episodes, the Court may properly consider their contents because they are central to the plaintiff's claim. *See, e.g., Waller*, 932 F.3d at 1282. Likewise, the overall content of Defendants' Mormon Stories YouTube Channel and their websites are also cited in the Complaint and central to Plaintiffs claims, such that the Court may properly consider them in evaluating Defendants' Motion to Dismiss.

HBO, TED[X], NPR, The New York Times, Newsweek, and Good Morning America. Complaint ¶ 41; *see also* Exhibit B.[3] The Mormon Stories YouTube homepage, excerpted in the Complaint, contains the following description of the podcast, showing the expressive connection between the title and the content:

> Mormon Stories Podcast w/ Dr. John Dehlin is the longest-running and most successful podcast in Mormonism. At Mormon Stories we explore, celebrate, and challenge Mormon culture through stories told by members and former members of The Church of Jesus Christ of Latter-day Saints.

https://www.youtube.com/mormonstories.

Because Defendants' use of "Mormon Stories" has unquestionable artistic relevance "by supporting the themes" of the podcast, the first threshold of *Rogers* is met. *Twentieth Century*, 875 F.3d at 1199.

***Rogers* Factor 2 – Not Explicitly Misleading:** To fail the second prong of the *Rogers* test, "[i]t is key . . . that the creator must *explicitly* mislead consumers" and "the use of a mark alone is not enough." *Id*. (quoting *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1240-41 (9th Cir. 2013)) (emphasis in original). Here, the MORMON STORIES podcast and related websites do not contain any explicit claim to have an official affiliation with the Church. Complaint ¶41. Quite the contrary; Defendants include written disclaimers on their websites, YouTube channel, and other podcast distribution platforms. *See* https://www.mormonstories.org/ ("Mormon Stories is not affiliated with, endorsed or sponsored by The Church of Jesus Christ of Latter-day Saints."); https://www.youtube.com/mormonstories (same); https://www.openstoriesfoundation.org/our-

---

[3] Exhibit B compiles a non-exhaustive list of national media outlets that have featured Dehlin and MORMON STORIES podcast over the past 20 years. *See also* footnote 1, *supra*.

team/ ("We are a secular organization, with no affiliation to any church.").[4] There has never been a statement from OSF or Dehlin claiming an official relationship or affiliation with the Church, let alone explicit claims, and the Complaint does not allege otherwise. Accordingly, the second *Rogers* threshold is overcome, and "the Lanham Act does not apply" to Defendants' use of "Mormon Stories" as the title of the podcast. *Twentieth Century*, 875 F.3d at 1199. Pursuant to *Rogers*, therefore, Plaintiffs Counts I-III should be dismissed.

### B. Dismissal is also Warranted Under the More Stringent *Stouffer* Factors

A similar test from Tenth Circuit district courts has been adapted from *Rogers* and likewise warrants dismissal. In *Stouffer*, the District of Colorado considered trademark infringement claims brought by the owner of registered rights in the mark WILD AMERICA against National Geographic for television series titled "America the Wild" and similar names. *Stouffer*, 400 F. Supp. 3d at 1166-67. National Geographic moved to dismiss all trademark claims "relate[d] to the titles" of the series under the First Amendment, citing *Rogers*. *Id*. at 1169, 1171. The Colorado court noted that the Tenth Circuit has "never considered directly" the *Rogers* test, extensively analyzed cases from all circuits addressing *Rogers*, and ultimately concluded that (a) there is a need for a limiting construction of the Lanham Act to protect First Amendment interests, (b) such a construction should be applicable before trial, and (c) additional factors should be added to *Rogers* to strike the right balance between trademark and First Amendment rights. *Id*. at 1171-79. Accordingly, the court fashioned a test using the following six non-exclusive factors augmenting the *Rogers* two-factor test to put more weight on the side of trademark owners in the analysis.

    1.  Do the senior and junior users use the mark to identify the same

---

[4] *See* footnote 2, *supra*.

kind, or a similar kind, of goods or services?

2. To what extent has the junior user added his or her own expressive content to the work beyond the mark itself.?

3. Does the timing of the junior user's use in any way suggest a motive to capitalize on popularity of the senior user's mark?

4. In what way is the mark artistically related to the underlying work, service, or product?

5. Has the junior user made any statement to the public, or engaged in any conduct known to the public, that suggests a non-artistic motive?

6. Has the junior user made any statement in private, or engaged in any conduct in private, that suggests a non-artistic motive?

*Id.* at 1179.

After allowing the Plaintiff to amend the complaint based on the foregoing framework, the District of Colorado applied its multi-factor test and dismissed the plaintiff's trademark claims with prejudice. *See Stouffer v. Nat'l Geographic Partners, LLC*, 460 F.Supp.3d 1133, 1146 (D. Colo. 2020) ("[E]ven viewing Stouffer's allegations in the light most favorable to him, the objective facts establish that National Geographic's titles for the Accused Series deserve First Amendment protection, even if Stouffer could prove likelihood of confusion.").

The same outcome is warranted here.

***Stouffer* Factor 1: dissimilarity of goods and services.** As alleged in the Complaint, the Church claims to use the asserted marks "in connection with the Church's religious, humanitarian, genealogical, historical, educational, and broadcasting services…". Complaint ¶15. Defendants do not operate a religion and do not use the "Mormon Stories" name for these same purposes. Rather, as explained above, Defendants offer a non-profit podcast providing interviews and commentary from people discussing historical and personal stories relating to Mormonism and

8

Mormon culture broadly, including commentary about the Church. As OSF's website has always stated, "We are a secular organization, with no affiliation to any church." https://www.openstoriesfoundation.org/our-team/. Accordingly, this factor favors Defendants' First Amendment protection above the interests of the Lanham Act.[5]

*Stouffer* **Factor 2: Additional Expressive Content.** Defendants add their own expressive content to their use of "Mormon Stories" as the title of the podcast, which is demonstrated by the content and design elements for each podcast episode depicted in the Complaint. *See* Complaint ¶41; Complaint Exhibit 2.  The Mormon Stories podcast has become a multi-decade institution providing religious-themed podcasting by virtue of its in-depth, intimate interviews with current and former adherents to the Church, historians with deep understanding of Mormon history, and others to examine the beauty and perils of Mormon culture. *See* Discussion under *Rogers* Factor 1, *supra*. This factor weighs heavily in favor of First Amendment exemption from Lanham Act scrutiny.

*Stouffer* **Factor 3: No Evidence of Motivation to Capitalize on Church's Popularity.** The Complaint acknowledges that Dehlin began using the "Mormon Stories" descriptor for his podcast in 2005, and has made "persistent use" of the mark over the subsequent decades. Complaint ¶4. Given the Church's very public and long-running efforts to distance itself from the name "Mormon,"[6] and the broad general meaning of "Mormon" that extends beyond the Church

---

[5] Even if this factor leaned in favor of Plaintiffs, the analysis of the remaining factors would still result in dismissal based on First Amendment protections. *See Stouffer*, 460 F. Supp. 3d at 1143 (finding the parties offered precisely the same goods and services, but nonetheless dismissing all claims with prejudice).

[6] *See, e.g.*, Ex. A at #7, #8. *See* footnote 1, *supra*.

itself, *see* Ex. A, no credible allegation can be made that the timing of Dehlin's adoption of the MORMON STORIES title in 2005 suggests a motivation to capitalize on some specific period of popularity of the Church. Not surprisingly, no such allegations are found in the Complaint. Indeed, the Complaint states, "the public has long referred to and recognized the Church as the 'Mormon Church' and its members as 'Mormons'" (*id.* ¶18), and the Church has declared "Mormon" to be a "nickname" of the Church and only "correctly" used as an "adjective."[7] Thus, Dehlin's use of that same term to describe the content of his Mormon-themed podcasts reveals only benign, descriptive motivations, not an intent to usurp the Church's goodwill or popularity. This factor objectively favors dismissal on First Amendment grounds.

*Stouffer* **Factor 4: The Marks are Used to Describe the Content of Defendants' Publications**. As explained above, Defendants use "Mormon Stories" as a descriptor of the primary content of its podcast, which presents interviews and commentary sharing stories about Mormon culture, traditions, history, and experiences. This critical factor heavily favors dismissal. *See Stouffer*, 460 F. Supp. 3d at 1145 ("[T]he fact that National Geographic is using its titles to describe the content of the Accused Series . . . weighs heavily in National Geographic's favor. The choice of a title for one's expressive creation is an expressive choice unto itself, including the choice of a descriptive title.").

*Stouffer* **Factors 5 and 6: No Allegation of Public or Private Statements or Conduct Indicating Non-Artistic Intent in Using the Marks**. These factors are similar to the second factor under *Rogers*, addressed above, and favor Defendants for the same reasons. Plaintiffs make no

---

[7] *See* footnote 6, *supra*.

allegation that Defendants have ever explicitly claimed an official affiliation with the Church, and the content of their websites (referred to in the Complaint) clearly conveys the contrary. Plaintiffs do not allege any facts suggesting that Defendants have made public or private statements that would indicate a non-artistic or non-expressive purpose for their use of the title "Mormon Stories" or any other design or content on their websites. Thus, the final two factors favor First Amendment protection against trademark infringement claims.

Under the totality of the *Stouffer* factors, it is clear that Defendants' use of MORMON STORIES is inextricably linked to the expressive subject matter and content conveyed via the non-profit podcast, and that Defendants have never made any explicit connection or affiliation to the Church. Because Defendants' motive is genuinely editorial and artistic, rather than a pretext for commercial free-riding, Defendants' accused conduct deserves First Amendment protection and Counts I-III should be dismissed with prejudice.

### C.  The *Jack Daniel's* Decision Does Not Preclude Dismissal Under *Rogers* or *Stouffer*

The Supreme Court's decision in *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023), which limited but did not overrule *Rogers*, does not preclude application of *Rogers* (or other First Amendment tests such as *Stouffer*) in the present circumstances. The *Jack Daniel's* case involved applying *Rogers* to the expressive design of a commercial consumer *product*; specifically the defendant offered and sold doggy chew toys shaped like a whiskey bottle and bearing the name "BAD SPANIELS." *Id*. at 148-49. The Supreme Court held that First Amendment protections under *Rogers* do not shield a defendant from the standard likelihood of confusion test under the Lanham Act when a defendant uses a mark as a source identifier for the commercial sale of goods. *Id*. at 153 (characterizing the holding as "a narrower path" meant to

address situations "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods.").

The Supreme Court's narrow framing of the *Jack Daniel's* decision properly recognizes *Rogers* as a viable, although "cabined doctrine," that provides an exception to typical application of the Lanham Act in appropriate circumstances, the details of which the Supreme Court took "no position" on. *Id*. at 155-56.[8] *See also, e.g., Down to Earth Organics, LLC v. Efron*, No. 22-cv-06218-NSR, 2024 WL 1376532, at *4 (S.D. N.Y. Mar. 31, 2024) ("Contrary to Plaintiff's assertion, *Jack Daniel's* did not substantially limit the scope and breadth of Rogers. The Supreme Court itself stated that its opinion is 'narrow' . . . ") (internal quotation marks and citation omitted).

The present circumstances fall squarely within the realm of First Amendment protection for which *Rogers* was originally formulated and which *Jack Daniel's* left untouched—the title of an expressive work intertwined with the expressive content thereof. Since *Jack Daniel's*, district courts have applied *Rogers* to dismiss trademark claims in circumstances similar to this case. *See, e.g., Lost Int'l, LLC v. Germanotta*, No. CV 25-0592 FMO, 2025 WL 4058219, at *5 (C.D. Cal. Dec. 15, 2025) (distinguishing *Jack Daniel's* and applying *Rogers* to dismiss a trademark infringement claim against the title of Lady Gaga's album on First Amendment grounds, noting that "[b]ecause defendant's use of the Mark is artistically relevant and does not explicitly mislead consumers as to the source or content of the challenged work, the Lanham Act does not apply . . . .") *Id*. at *5 (internal quotation marks omitted); *Down to Earth*, 2024 WL 1376532, at *7-9

---

[8] In fact, the Supreme Court recognized that there may be situations when a term is used as a source identifier and still qualifies for the First Amendment immunity applied by *Rogers*. *Id*. at 159. Defendants contend this case presents such circumstances.

(applying *Rogers* to dismiss trademark infringement claims on First Amendment grounds after *Jack Daniel's*).

For example, in *Down to Earth*, the district court considered trademark infringement claims directed to the title of a documentary series called "Down to Earth." The court found that "Defendants [were] undoubtedly using 'Down to Earth' simply to identify the subject matter and tone of" the documentary series.  *Id*. at *4.  The court acknowledged the narrowness of the *Jack Daniel's* ruling and determined to "afford Defendants the heightened First Amendment scrutiny of the *Rogers* balancing test." *Id*. at *5. The court found it notable that the accused series "pertains to raising awareness about leading a sustainable, holistic lifestyle to support one's personal health" and, despite having "sponsors" and facilitating "the sale of commercial products, the Series still constitutes ***non-commercial speech and an expressive work***."  *Id*. (emphasis added). Applying *Rogers*, and despite the allegations in the complaint about likely and actual confusion, the court granted the defendant's Rule 12(b)(6) motion and dismissed the federal and state law trademark claims. *Id*. at *9.

Like the *Down to Earth* series, Defendants' MORMON STORIES podcast series uses the term "Mormon" in the title to signal the subject matter of the series—stories about Mormonism, Mormon culture, Mormon history, and Mormon experiences. There is nothing in the title of the podcast that is overtly misleading or deceptive—indeed, it accurately and creatively describes the content that the listener can anticipate engaging with. Thus, the present case harkens back to the roots of *Rogers* and falls squarely within the zone where First Amendment exemption from trademark infringement claims should apply—*i.e.*, the title of an expressive series inextricably intertwined with the content of the series.  *Jack Daniel's* does not counsel otherwise.

Indeed, the circumstances surrounding the MORMON STORIES podcast are uniquely compelling for purposes of First Amendment protection. The podcast is a non-profit endeavor[9] that gives a voice to opinions and information on the aforementioned matters of public interest, focusing on topic relating to religious expression, and thus offering non-commercial speech that is often directed at (and sometimes critical of) the party attempting to enforce its trademarks— here, the Plaintiffs. Defendants contend this case is unique in the foregoing facts, and that those facts demand Defendants' use of MORMON STORIES be given the highest level of First Amendment protection available. *See, e.g., Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.") (internal quotation marks and citation omitted); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 540 (2022) (citing "the First Amendment's double protection for religious expression"); *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 322 (4th Cir. 2015) ("The risk of impinging on protected speech is much greater when trademarks serve not to identify goods but rather to obstruct the conveyance of ideas, criticism, comparison, and social commentary."); *Israel v. Strassberg*, No. 2:15-cv-741 TS, 2018 WL 4290394, at *9 (D. Utah Sept. 7, 2018) (dismissing Lanham Act claims because the defendants' "publications fall outside of the purview of congressional reach under the commerce clause because they include non-commercial speech, which is entitled to the highest levels of protection by the First Amendment of the Constitution.").

---

[9] The MORMON STORIES podcast has long been promoted as "a product of the Open Stories Foundation." *See* https://www.youtube.com/mormonstories; https://www.openstoriesfoundation.org/.

Accordingly, whether under *Rogers* or *Stouffer* (or both), the Court should find the First Amendment bars Plaintiff's trademark claims and dismiss Counts I-III with prejudice.

## II.      PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES.

"[T]he Lanham Act, which governs trademarks, contains no statute of limitations, and expressly provides for defensive use of 'equitable principles, including laches.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n. 15 (2014) (quoting 15 U.S.C. § 1115(b)(9)). "Because the Lanham Act has no statute of limitations and applies the principles of equity to all claims, laches may bar both equitable and legal relief." *Kars 4 Kids Inc. v. America Can!*, 98 F.4th 436, 451 (3rd Cir. 2024) (vacating judgment of infringement and remanding with instructions to dismiss trademark claims with prejudice based on laches after 12-year delay).

Although laches is an affirmative defense, this Court has recognized "there is no *per se* rule that affirmative defenses are inappropriate for consideration on a Rule 12(b) motion to dismiss" and "[a]t the motion to dismiss stage a claim may be barred by laches when 'the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.'" *Ariix LLC v. Usana Health Sciences, Inc.*, No. 2:22-cv-00313, 2023 WL 2574319, at *6 (D. Utah Mar. 20, 2023) (quoting *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("To be sure, on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense.")); *see also Strauss v. Angie's List, Inc.*, No. 2:17-cv-02560-HLT-TJJ, 2019 WL 399910, at *3-4 (D. Kan. Jan. 31, 2019) (denying motion to reconsider dismissal under Rule 12(b)(6) of trademark claims based on laches).

The defense of laches bars a claim when there is (a) an unreasonable lack of diligence by the plaintiff in enforcing its rights, and (b) prejudice to the defendant. *See Biodiversity*

*Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014). "Courts apply the delay and prejudice elements with flexibility." *Id*. The Supreme Court has noted that "[e]quity eschews mechanical rules … [and] has acted on the principle that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced...." *Id*. (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). Importantly, a delay in enforcement that exceeds the most analogous state statute of limitations period results in a strong presumption that the claim is barred by laches. *See Albion Int'l, Inc. v. Am. Int'l Chem., Inc.*, No. 2:07-cv-0994 CW, 2012 WL 3776866, at \*4 (D. Utah Aug. 30, 2012) ("While the Tenth Circuit has not expressly adopted such a presumption, the court believes it would if faced with the issue directly. This court will apply the presumption of laches in this case."); *Yeager v. Fort Knox Sec. Prods.*, 602 Fed. Appx. 423, 431 (10th Cir. 2015) ("In dealing with Lanham Act claims courts have looked to analogous state limitation provisions and invoked presumptions in favor of (or against) laches defenses to claims brought outside (or inside) the analogous limitations period."). This Court applies the three-year state statute of limitations for fraud as the presumptive laches period in Lanham Act cases. *See Albion*, 2012 WL 3776866, at \*5; *Icon Health & Fitness, Inc. v. The Nautilus Group, Inc.*, No. 1:02-cv-00109 TC, 2005 WL 3681813, at \*5 (D. Utah. Oct. 24, 2005).

Applying the equitable principles of laches here, even after accepting Plaintiffs' well-pleaded Complaint allegations as true, warrants dismissal of Counts I-III.

**Plaintiffs' Inexcusable Delay**: "[W]here the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."

*Jenco, LC v. Valderra Dev.*, LLC, 2026 WL 575157, at *7 (D. Utah Mar. 2, 2026) (quoting *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001)).

Plaintiffs' Complaint correctly alleges that Defendants began using the MORMON STORIES title for their podcast in 2005, *twenty years* before the Church took the present enforcement actions. Complaint ¶32. During that time, the MORMON STORIES podcast (on YouTube alone) amassed over 300,000 subscribers and published more than 2,000 episodes. *Id*. at ¶ 36; https://www.youtube.com/mormonstories.[10] While the Complaint allegations are silent about the Church's date of first awareness of Defendants' use of MORMON STORIES, the precise date need not be established for the Court to conclusively determine that Plaintiffs knew or "should have known" about Defendants' MORMON STORIES podcast many years before filing suit and long before the three-year limitations period triggering a presumption of laches. This is because Defendants' podcast has been open, notorious, and nationally distributed since 2005, and because the podcast extensively discusses and examines *the Church itself*. Complaint ¶¶ 32, 36, 41; https://www.youtube.com/mormonstories (over 2,000 podcast videos dating back to 2006); https://www.mormonstories.org/ (over 2,000 podcast videos dating back to 2005).

The Complaint shows that MORMON STORIES podcast has been featured in national outlets such as The New York Times, ABC's Good Morning America, NPR, HBO, and Newsweek. *See* Complaint ¶ 41; *see also* Exhibit B.[11] For example, on June 19, 2007, Dehlin appeared on ABC's Good Morning America television show to discuss the presidential campaign of Mitt Romney, and ABC released an article at the same time titled, "Some Mormons Worry as

---

[10] *See* footnote 2, *supra*.
[11] *See* footnote 1, *supra*.

Faith Comes Under Scrutiny," which mentions "John Dehlin, a Mormon businessman and journalist who runs a Web site called mormonstories.org."[12] In 2013, The New York Times published an article entitled, "Some Mormons Search the Web and Find Doubt," which reported the story of members of the Church in Sweden losing their faith and cites Dehlin and MORMON STORIES podcast. *See* Exhibit C ("He listened to the 'Mormon Stories' podcasts"). In 2015, The New York Times published another article entitled "Mormon Church Threatens Critic With Excommunication" discussing the Church's forthcoming action of excommunicating "John P. Dehlin" the "host of the 'Mormon Stories' website and podcast." Exhibit D.[13] Indeed, the Church itself issued a press release in 2015 entitled "Church Responds to John Dehlin's Public Comments" referring to Dehlin and the opinions he expresses on his podcast, over a decade before filing the present lawsuit. *See* Ex. B, #14. In short, the facts and allegations appropriately considered in the context of the present Motion make it impossible for the Church to claim it was not aware of Defendants' use of MORMON STORIES for more than a decade before filing the present action.

Defendants' widespread, open use of MORMON STORIES for decades leaves no room for an inference other than the Church having knowledge of the accused actions—or at a minimum constructive knowledge—long before it filed this case, thus triggering a presumption of laches and rendering the timing of Plaintiffs' enforcement inexcusable on its face. *See, e.g.,*

---

[12] Ex. B, #1. At the time, ABC's Good Morning America program was attracting more than 4.5 million viewers, according to AdWeek. *See* https://www.adweek.com/tvnewser/morning-show-ratings-week-of-june-6/.

[13] At that time, The New York Times reported average weekday circulation of approximately 2.18 million and average Sunday circulation of approximately 2.62 million, as measured by the Alliance for Audited Media. *See* https://www.nytco.com/press/the-times-sees-circulation-growth-in-first-quarter/.

*Bridgestone/Firestone Research, Inc. v. Auto. Club de l'Ouest de la France*, 245 F.3d 1359, 1362 (Fed. Cir. 2001) (finding the first laches element satisfied where, *inter alia*, the parties did not dispute widespread use for more than 20 years); *GTE Corp. v. Williams*, 649 F. Supp. 164, 175-76 (D. Utah 1986) (finding that mark owner should have known about defendant's eight years of open and notorious use of the mark); *Argus Research Grp., Inc. v. Argus Media, Inc.*, 562 F. Supp. 2d 260, 274 (D. Conn. 2008) (imputing plaintiff with constructive knowledge under the laches inquiry in view of a decade of serial, open publication).

As the Complaint demonstrates, the Church is a 200-year-old religious institution that has grown to over 17 million members and manages more than 30,000 congregations in over 160 countries. Complaint ¶¶14-15. Given its size and sophistication, the Church is properly charged with knowledge of Defendants' MORMON STORIES podcast dating back to its inception in 2005, or shortly thereafter. *See Rodriguez-Aguirre*, 264 F.3d at 1208; *supra*; *Cricut, Inc. v. Enough for Everyone, Inc.*, No. 2:21-cv-00601-TS-DAO, 2024 WL 2134776, at *2 (D. Utah May 13, 2024) ("Where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.") (internal quotation marks and citation omitted); *Cobe Labs., Inc. v. Baxter Healthcare Corp.*, 34 U.S.P.Q.2d 1472, 1473 (D. Colo. 1994) ("[Plaintiff] delayed bringing suit for more than eight years after the date it knew or should have known of [defendant's] activities. … Accordingly, I find and conclude that [Plaintiff's] infringement claim is barred by the doctrine of laches.").

Even taking the pleaded allegations in the light most favorable to Plaintiffs, Plaintiffs' delay in bringing suit is at least 5 times longer than the analogous three-year limitations period,

19

giving rise to a particularly strong presumption of laches here. *See Albion*, 2012 WL 3776866, at *6 (dismissing Lanham Act claims and stating: "[I]t is clear that Albion sat on its claim against AMT for a period that exceeds the three-year statute of limitations for fraud claims under Utah law. Therefore, the presumption of laches applies to support AMT's argument that Albion's delay was unreasonable."). Indeed, the Church's inexcusable 20-year period of inaction and delay in this case presents the most compelling circumstances under which principles of equity demand complete dismissal of Plaintiffs' trademark infringement claims on laches grounds. *See La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 437 (1903) ("[N]o move was made against them for twenty-five years … A clearer case of laches could hardly exist."); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (affirming summary judgment dismissal of trademark claims for laches based on 20-year delay).

### Defendants' Prejudice

Beyond the presumption of laches, Plaintiffs' Complaint independently demonstrates that their unreasonable, decades-long delay has unduly prejudiced Defendants. The prejudice element of laches is met "when the defendant has expended substantial time and effort during the delay" that the belated claim could defeat. *Biodiversity Conservation*, 762 F.3d at 1091; *see also Bridgestone*, 245 F.3d at 1363 ("Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice."). Moreover, "laches is a question of degree" such that "if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice is required."

20

*Chattanoga Mfg., Inc. v. Nike, Inc.*,301 F.3d 789, 795 (7th Cir. 2002) (finding prejudice from 15-year delay and affirming dismissal of trademark claims based on laches).

As the Complaint makes clear, during the 20-year period of inaction by the Church, Dehlin "formed the nonprofit corporation Open Stories Foundation in 2010…to advance 'the mission of Mormon Stories podcast.'" Complaint ¶ 32. Defendants also grew the reach and exposure of the podcast through expansion onto YouTube, Apple, Spotify and other social media sites. *Id*. at ¶¶ 36-37. And Defendants expanded OSF by creating more Mormon-branded podcasts, such as "Mormon Matters," "Mormon Mental Health" and others as shown below.



*Id*. at ¶ 38; https://www.openstoriesfoundation.org/.[14] This is precisely the type of expansion and investment under an accused mark that establishes undue prejudice for laches. *See, e.g., Bridgestone*, 245 F.3d at 1362-63 (prejudice supporting laches shown by Bridgestone's "longstanding investment in and promotion of the LEMANS brand of tires, including use of the

---

[14] *See* footnote 2, *supra*.

mark on at least four types of tires manufactured by Bridgestone: LEMANS SR, LEMANS Metric, LEMANS Touring, and LEMANS All Terrain.").

Plaintiffs' Complaint allegations prove that allowing Plaintiffs to pursue their inexcusably belated trademark action would cause Defendants severe prejudice by upending more than 20 years of growth and investment to build goodwill and public recognition in the MORMON STORIES podcast and related properties via thousands of episodes and millions of views. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (applying laches after delay of more than ten years and finding prejudice because "Hot Wax permitted Turtle Wax's advertising and the development of its products to go unchecked for well over a ten- to twenty-year period."); *GTE Corp. v. Williams*, 649 F. Supp. 164, 175-76 (D. Utah 1986) (finding prejudice to defendant where 8 years of use of the mark led to "development of a successful, well reputed business with services and products under the trademark" through substantial "effort and expense…." by defendant.); *Ga.-Pacific Corp. v. Great Plains Bag Co.*, 614 F.2d 757, 763 (C.C.P.A. 1980) (finding prejudice where plaintiff failed to assert its rights and defendant achieved substantial growth over a 12-year period under the mark).

Plaintiffs cannot rationalize their extreme delay by creating a *post hoc* narrative about Defendants' supposed evolution or development over the years. Allowing such a justification to preclude laches would effectively and unjustly reward Plaintiffs' delay, particularly where Plaintiffs are by far the more sophisticated and powerful party. *See Hot Wax*, 191 F.3d at 823 (rejecting reliance on the defendant's alleged "evolutionary development" as an excuse for delay; "It cannot be equitable for a well-informed merchant with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of court

22

decree, much that the competitor has striven for and accomplished.") (quoting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 498 (2d Cir. 1961) (citation omitted)).

Accordingly, taking the allegations in the Complaint at face value, the defense of laches is established beyond reasonable dispute and the Court should exercise its equitable powers to dismiss Counts I-III with prejudice. *See Strauss*, 2019 WL 399910, at *4 ("It was, therefore, appropriate for Defendant to raise the defense in a Rule 12(b)(6) motion to dismiss, and the Court did not err in granting dismissal based on the affirmative defense of laches where it was apparent on the face of the complaint.").

## III.   THE CHURCH FAILS TO PROVIDE A CLEAR PICTURE OF ITS TRADEMARK THEORIES

In the unlikely event the Court does not dismiss Counts I-III on the foregoing grounds, the Court should dismiss the trademark claims for their unacceptable level of vagueness and ambiguity or in the alternative provide a more definite statement. "The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief." *Wenger v. Stoss*, 2024 U.S. Dist. LEXIS 174495, *5 (D. Kan. Sept. 25, 2024) (citation modified). "Requiring a more definite statement is appropriate when addressing unintelligible or confusing pleadings" and motions to dismiss are proper "when a party is unable to determine the issues to which they must respond." *Id.* at *6 (citation modified). The Tenth Circuit is critical of complaints which force a court and defendants to search the allegations "and attempt to match the factual assertions with the elements of [the claim] . . . to determine if the complaint states a claim for relief." *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989). Such pleadings fall short of Rule 8's notice pleading obligation, resulting in the need for dismissal

or, alternatively, amendment. *Id*. In this case, Plaintiffs' Complaint asserts multiple causes of action under trademark law, but fails to differentiate the factual allegations supporting each claim.

First, the Complaint recites conclusory allegations claiming that Plaintiffs' "Mormon"-styled trademarks "constitute a family of marks." Complaint ¶ 19. The Complaint, however, lacks any well-pleaded *facts* to plausibly claim ownership of a family of marks, which requires facts showing the Church "sufficiently advertised or promoted" Mormon-styled marks to generate "a recognition that [the Church] possesses a 'family of marks'" using "Mormon", *Scott v. Mego Int'l, Inc.*, 519 F. Supp. 1118, 1128 n.6 (D. Minn. 1981), and that this happened *before 2005*, when Dehlin first used MORMON STORIES for his podcast, *see Pfizer Inc. v. Astra Pharm. Prods., Inc.*, 858 F. Supp. 1305, 1329 (S.D.N.Y. 1994) ("[T]he family of marks should be judged at the time that the junior user entered the marketplace."). The Complaint fails to plead *any facts* meeting this standard, and any trademark claims premised on a family of "Mormon" marks should be dismissed.

Second, the Complaint fails to provide sufficient clarity regarding the basis for its trademark infringement claims. The Complaint broadly defines "Plaintiffs' Marks" to collectively include the alleged family of nine so-called "MORMON Marks," a so-called Light-Rays Design, a Christus Symbol, and several federal trademark registrations. Complaint ¶¶ 21, 28. The Complaint then alleges a variety of "actions" by Defendants, including the use of MORMON STORIES, the use of "light rays" design features, the use of a Christus image, the use of brown, blue, and orange logos, the use of copyrighted images. *Id*. at ¶¶ 31-41. However, under Plaintiffs' causes of action, Plaintiffs offer nothing but boilerplate statements that fail to identify with particularity which actions infringe which trademark rights.

24

Plaintiffs' entire claim under Count I is a single sentence: "The acts of Defendants complained of herein constitute infringement of Plaintiffs' federally registered trademarks[.]" Complaint ¶59. Plaintiffs' claim under Count II is similar: "The acts of Defendants complained of herein constitute trademark infringement, false designations of origin, and false or misleading descriptions or representations of fact in violation of Section 43(a) of the Lanham Act[.]" *Id*. at ¶ 62. Finally, Plaintiffs' claim under Count III is based collectively on "Defendants' use of Defendants' Marks, the Christus Symbol, the Light-Rays Design Marks, other marks incorporating Plaintiffs' Marks, and other indicia[.]" *Id*. at ¶ 65.

In essence, Plaintiffs allege that all of Defendants' *collective* actions infringe all of Plaintiffs' *collective* trademarks, rendering the claims unreasonably vague and preventing Defendants from knowing specifically what actions are alleged to infringe which marks. The Court should dismiss Counts I-III for being unreasonably vague, or alternatively order Plaintiffs to amend the Complaint to provide Defendants with a more definite statement.

## IV.    PLAINTIFFS' COPYRIGHT CLAIM SHOULD BE DISMISSED FOR FAILURE TO PLEAD WHEN THE ALLEGED INFRINGEMENTS OCCURRED

To properly plead a copyright infringement claim, courts in the Tenth Circuit require the plaintiff to allege: "(1) which specific original works are the subject of the claim, (2) that the plaintiff owns the copyright, (3) that the works have been registered in compliance with the copyright laws, and (4) by what acts and **during what time** the defendant has infringed the copyright." *Boyd v. Yardley*, No. 2:18-cv-132, 2019 WL 7505682, at *3 (D. Utah Dec. 12, 2019) (emphasis added). In *Boyd*, this Court found the complaint deficient because "it is not clear during what time Defendant infringed the copyright." *Id*. The Court emphasized that Rule 8 requires "the

particular infringing acts be set out with some specificity" such that "[b]road, sweeping allegations of infringement do not comply with Rule 8." *Id*.

The same defect exists here. Plaintiffs identify a number of copyrighted images and provide side-by-side comparisons in Exhibit 2, but neither the Complaint nor Exhibit 2 identify *when* any alleged infringement occurred. Plaintiffs do not allege when any accused thumbnail, social-media post, promotional image, advertisement, webpage, or other accused use was first published. They do not allege how long any image or whether any particular use was removed before suit. The Complaint, therefore, deprives Defendants of the ability to evaluate the timeliness of the claims and whether any are subject to dismissal for falling outside the Copyright Act's three-year limitations period. Rule 8 does not permit such ambiguity.

Accordingly, the Court should dismiss Count IV. At a minimum, if Plaintiffs are allowed to amend, the Court should require Plaintiffs to identify with specificity, for each allegedly infringed work, the dates and time periods during which the alleged infringement occurred.

## CONCLUSION

In view of the foregoing, Defendants respectfully move the Court to dismiss Counts I-IV of the Complaint.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Mark A. Miller*

Mark A. Miller
Elliot Hales
Olivia McQuarrie
Mike Keyes
**Dorsey & Whitney, LLP**

Elissa Brockbank Reese
**Potomac Law Group, PLLC**

26

Ryan E. Hatch
**Hatch Law, PC**

*Attorneys for Defendants Open Stories Foundation and John P. Dehlin*

## CERTIFICATION UNDER D.U.CIV.R. 7-1(a)(6)

I, Mark A. Miller, certify that this **Motion to Dismiss** contains 7,594 words and complies with DUCivR 7-1(a)(4).

/s/ Mark A. Miller
Mark A. Miller