UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INTELLECTUAL RESERVE, INC.; and THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,<br><br>  Plaintiffs,<br><br>v.<br><br><br>OPEN STORIES FOUNDATION; and JOHN P. DEHLIN,<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:26-cv-00321-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court is third-party Movant David Scott Taylor's Motion to Intervene or, in the Alternative, for Leave to File Amicus Curiae Brief.[1]  For the reasons discussed below, the court DENIES the Motion.

### BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff The Church of Jesus Christ of Latter-day Saints (the Church) is a corporation based in Salt Lake City, Utah.[3]  Plaintiff Intellectual Reserve, Inc. is a Utah asset management entity which holds legal title to the Church's intellectual property rights, including its trademarks and copyrights.[4]  Since the Church's founding in 1830, Plaintiffs have used in commerce various

---

[1] Dkt. 17, *Motion to Intervene or, in the Alternative, for Leave to File Amicus Curiae Brief* (*Motion*).

[2] The following facts are as alleged in the Complaint .  *See* Dkt. 1, *Complaint for Trademark Infringement and Copyright Infringement* (*Complaint*).

[3] *Complaint* at ¶¶ 5, 13.

[4] *Id.* ¶ 6.

marks incorporating the term "Mormon."[5]  In recent years, they have used the term in conjunction with a distinctive Light-Rays Design mark in their logos.[6]  Plaintiffs own U.S. trademark registrations for the terms "Mormon," "Book of Mormon," and other related terms and icons.[7]

Defendant Open Stories Foundation is an Arizona non-profit corporation and Defendant John Dehlin is an individual.[8]  Together, Defendants operate a religious-themed podcast and related offerings under the name and mark "MORMON STORIES."[9]  Mormon Stories has no affiliation to the Church.[10]  Mormon Stories uses a logo containing the title of the podcast on a blue or brown background with a light-ray design.[11]

On April 17, 2026, Plaintiffs filed their Complaint against Defendants bringing claims for trademark and copyright infringement.[12]  On May 8, 2026, Taylor filed the Motion to Intervene.[13]  Taylor identifies himself as "Ogimaa Songab Midegah Ogichidaa Zozep Anishaa, Traditional Chief (Ogimaa) of the Adik Doodem (Caribou Clan); Gautawaewauwissoowin (Senior Chief) of the Anishinaabe 8th Fire Traditional Governance Lodge; Treaty Chief and authorized representative for lineal treaty interests."[14] He files the Motion in his representative capacity for the "Indigenous custodial, governance, and treaty-protected interests in historical

---

[5] *Id.* ¶ 15 ("Specifically, the Church uses the marks MORMON, BOOK OF MORMON, BOOK OF MORMON STORIES, MORMON MESSAGES, MORMON CHANNEL, MORMON TABERNACLE CHOIR, BOOK OF MORMON VIDEOS, MORMON BATTALION, MORMON HANDICRAFT, and others . . .").

[6] *Id.* ¶¶ 20–25.

[7] *Id.* ¶ 28.

[8] *Id.* ¶¶ 7–8.

[9] *Id.* ¶ 31.

[10] *Id.* ¶ 2.

[11] *Id.* ¶¶ 33–34.

[12] *Id.* ¶¶ 58–70.

[13] *Motion.*

[14] *Id.* at 2.

records and faith traditions maintained under Indigenous law and custom."[15]  Taylor seeks to intervene to oppose the "granting of exclusive trademark enforcement over" the word "Mormon" and related terms.[16]  Plaintiffs oppose the Motion.[17]  The Motion is fully briefed and ripe for review.[18]

## ANALYSIS

Taylor seeks to intervene, or alternatively to file an amicus curiae brief.  First, he argues he should intervene as a matter of right because he possesses interests that may be impaired by the disposition of the action.[19]  Second, Taylor asserts that the court should grant him permissive intervention because his participation in the matter will assist the court in resolving the issues at hand.[20]  Lastly, in the alternative, Taylor seeks leave to file an amicus curiae brief addressing various legal issues related to the Complaint.[21]  The court considers and rejects each argument in turn and denies the Motion.

### I.       Motion to Intervene

The court first considers the request to intervene.  Taylor argues the court must grant the Motion as a matter of right because disposition of the action may impair his represented interests "in the lawful preservation and reference of Indigenous history and faith."[22]  Taylor alternatively

---

[15] *Id.*

[16] *Id.* at 3.

[17] Dkt. 26, *Response in Opposition to Motion to Intervene or, in the Alternative, for Leave to File Amicus Curiae Brief* (*Opposition*).

[18] *See Motion*; *Opposition*; Dkt. 27, *Reply in Support of Motion to Intervene or, in the Alternative, for Leave to File Amicus Curiae Brief* (*Reply*).

[19] *Motion* at 4.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4.

contends permissive intervention is appropriate because his inclusion "will assist the Court by addressing threshold legal limits."[23]

### A. Legal Standard

Under Federal Rule of Civil Procedure 24(a), an outside party may intervene in a case as a matter of right when the movant "[1] claims an interest relating to the property or transaction that is the subject of the action, and [2] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless [3] existing parties adequately represent that interest."[24]  To satisfy the first element, the movant's interest must be "direct, substantial, and legally protectable."[25]  This inquiry is "highly fact-specific."[26] Courts are to "follow a somewhat liberal line in allowing intervention."[27]  "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."[28]  Movant bears the burden of establishing his right to intervene.[29]

Alternatively, a movant may intervene with the court's permission when either the movant "has a claim or defense that shares with the main action a common question of law or fact."[30]  In considering a permissive motion which meets this threshold,

> courts may consider such factors as: (1) whether the intervention
> will unduly delay or prejudice the adjudication of the original
> parties' rights; (2) whether the would-be intervenor's input adds
> value to the existing litigation; (3) whether the petitioner's interests

---

[23] *Id.*

[24] Fed. R. Civ. P. 24(a)(2).

[25] *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001) (citation modified).

[26] *Id.*

[27] *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009).

[28] *San Juan County v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007).

[29] *See Coal of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).

[30] Fed. R. Civ. P. 24(b)(1)(B).

are adequately represented by the existing parties; and (4) the availability of an adequate remedy in another action.[31]

The court has discretion whether to grant a permissive motion to intervene.[32]

### B. Intervention as a Matter of Right

The court first considers whether Taylor has met the standard for intervening as a matter of right. Taylor argues intervention is proper because his interests "in the transmission and preservation of narratives in which ['Mormon' and related] terms are used non-commercially" may be impaired by Plaintiffs' trademark enforcement action.[33] Meanwhile, Plaintiffs argue the Taylor has not identified any interests cognizable under Rule 24, and that the proceedings here do not involve any challenge to Taylor's own use of the term.[34] The court agrees with Plaintiffs.

Taylor fails to establish both prongs required to establish intervention as a matter of right. First, the Motion does not show he has a direct, substantial, and legally protectable interest. Taylor states he represents "legally protectable treaty-era and constitutional interests in the lawful preservation and reference of indigenous history and faith"[35] because he "engages in the preservation, discussion, and transmission of historical and religious narratives in which the terms 'Mormon' and 'Book of Mormon' are used referentially and descriptively to identify subject matter."[36] However, simply using certain terms in a general, unspecified way does not constitute a direct or substantial interest in the disposition of the Church's trademark

---

[31] *Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 691 (D. Colo. 2008) (citation modified).

[32] *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996).

[33] *Reply* at 3; *see also Motion* at 4.

[34] *Opposition* at 5–9.

[35] *Motion* at 4.

[36] *Reply* at 2.

infringement claims against Mormon Stories.[37]  Additionally, although Taylor cites various 18th and 19th century treaties in support of his Motion, he fails to explain how any of these treaties establish that he himself has a legally protectable interest in the matters of this case. [38]

Further, even if Taylor were to show he had a cognizable interest in the terms "Mormon" and "Book of Mormon," he fails to satisfy the second element.  The Motion does not establish that Taylor "is so situated that disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest."[39]  The Complaint does not challenge or seek to limit Taylor's usage of the terms at issue; it exclusively challenges Defendants' use of the various terms in its logo and in conjunction with Plaintiffs' other design marks.[40]  A decision in Plaintiffs' favor would not bind or limit Taylor's use of the terms because he is not a party to the lawsuit.[41]  Because Taylor does not establish he has an interest which may be impaired or impeded by the disposition of this action, the court denies his Motion to Intervene as a matter of right.

### C.  Permissive Intervention

The court next considers whether to grant the Motion as a permissive intervention. Taylor argues that the court should allow him to intervene because his "participation will assist the Court by addressing threshold legal limits—including the First Amendment, the scope of the

---

[37] The Lanham Act's trademark protections do not concern the general mention or discussion of a mark, but rather only the commercial use of the mark "in connection with any goods or services." *See Utah Lighthouse Ministry v. Found. For Apologetic Info. & Research,* 527 F.3d 1045, 1052 (10th Cir. 2008).

[38] *See Motion* at 2 (stating his interests arise from "the 1789 Treaty of Harmar and the 1863 Treaty of Old Crossing; and Senior High Priest of the Midewiwin, an Indigenous governance, ceremonial, and knowledge-keeping institution.").

[39] *See* Fed. R. Civ. P. 24(a)(2).

[40] *See Complaint* ¶¶ 31–51.

[41] *See Keller Tanks Servs. II v. Comm'r*, 854 F.3d 1178, 1193 (10th Cir. 2017) (providing issue preclusion requires "the party against whom the doctrine is invoked [be] a party or in privity with a party to the previous adjudication").

Lanham Act, [the American Indian Religious Freedom Act (AIRFA)] policy, and federal treaty principles."[42]  The court interprets this argument as an assertion that Taylor "has a claim or defense that shares with the main action a common question of law or fact."[43]  While some of the issues Taylor identifies may well arise in resolving the claims in this case, Taylor fails to identify how he himself has claims or defenses that share a common question of law or fact with those presented here.  Simply desiring to make arguments why a case should be resolved in a particular manner is insufficient to meet this standard.[44]  Accordingly, the court declines to grant permissive intervention.

## II.    Motion for Leave to File Amicus Curiae

The court now turns to Taylor's request to file an amicus curiae brief should the Motion to Intervene be denied.  Neither the Federal Rules of Civil Procedure nor Tenth Circuit precedent provide a standard for district courts to consider whether to permit a non-party to file an amicus brief.  District courts in this circuit have previously relied on Federal Rule of Appellate Procedure 29, which governs amicus briefs in the United States Circuit Courts of Appeal.[45]  Rule 29 requires a Motion explain "(A) the movant's interest; and (B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case."[46]  In determining whether to permit the filing of an amicus brief, courts often consider the following factors:

---

[42] *Motion* at 4.

[43] *See* Fed. R. Civ. P. 24(b).

[44] *See City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010) (holding that even though "the words 'claim or defense,' as they appear in Rule 24(b), should not be strictly interpreted so as to preclude permissive intervention[,] . . . [the] intervenor must have a claim or defense that shares at least some aspect with a claim or defense presented in the main action.").

[45] *See United States v. Bd. of Cnty. Comm'rs of Otero*, 184 F. Supp. 3d 1097, 1115 (D.N.M. 2015).

[46] Fed. R. App. P. 29(a)(3).

7

(1) "whether the proposed *amicus* is a disinterested entity";
(2) "whether there is opposition to the entry of the *amicus*";
(3) "whether counsel is capable of making arguments without the assistance of an *amicus*"; (4) "the strength of the information and argument presented by the potential *amicus curiae's* interests"; and (5) "perhaps most importantly," "the usefulness of information and argument presented by the potential *amicus curiae* to the court."[47]

Taylor states he "provides legal analysis not fully presented by the parties . . . ."[48] The court is unpersuaded. First, when Taylor filed his Motion, only the Complaint had been filed.[49] The parties had not filed any dispositive motions or other pleadings regarding the merits of the Complaint from which Taylor could conclude he would be providing new legal analysis not already provided by the parties.[50] More importantly, Taylor seeks to inject matters into this case that do not appear relevant to its disposition. Taylor seeks to address issues of "treaty-law, and AIRFA-informed limits implicated by the claims asserted."[51] Taylor does not explain—nor is it immediately apparent to the court—how these issues of Federal Indian Law are pertinent to the question whether Defendants' podcast logo infringes upon Plaintiffs' trademarks. And as Plaintiffs note in their Opposition brief,[52] entertaining issues of Mormon theology regarding America's ancestral inhabitants risks impermissibly entangling the court in questions of religious history.[53] Accordingly, the court denies Taylor's request for leave to file an amicus brief.

---

[47] *Otero*, 184 F. Supp. 3d at 115 (citation modified) (quoting *Ass'n of Am. Sch. Paper Suppliers v. United States*, 683 F. Supp. 2d 1326, 1328 (Ct. Int'l Trade 2010)).

[48] *Reply* at 4–5.

[49] *See generally Docket*.

[50] After the Motion was fully briefed, Defendants filed a Motion to Dismiss. *See* Dkt. 41, *Motion to Dismiss*. Plaintiffs have yet to file a response to the Motion to Dismiss.

[51] *Motion* at 5.

[52] *Opposition* at 10–11.

[53] *See Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1211 (10th Cir. 2025) (holding "the First Amendment precludes a court or a jury from 'entering the forbidden domain' of inquiring into 'the truth or verity of religious doctrines or beliefs.'" (citation modified) (quoting *United States v. Ballard*, 322 U.S. 78, 86–87 (1944))).

**CONCLUSION**

For the reasons discussed above, the court DENIES the Motion to Intervene or for Leave

to File Amicus Curiae Brief.[54]


SO ORDERED this 26th day of June, 2026.

BY THE COURT:

ROBERT J. SHELBY

United States District Judge

---

[54] Dkt. 17.