David J. Jordan (UT Bar No. 1751)
djordan@foley.com
David L. Mortensen (UT Bar No. 8242)
dmortensen@foley.com
Timothy V. Hansen (UT Bar No. 18008)
tim.hansen@foley.com
Euigin Kim Pace (UT Bar No. 19644)
gpace@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: (801) 401-8900

Tyson D. Smith (TX Bar #24079362) (*Pro Hac Vice*)
tsmith@pirkeybarber.com
Stephen P. Meleen (TX Bar #00795776) (*Pro Hac Vice*)
smeleen@pirkeybarber.com
Ryan J. Miller (TX Bar #24131514) (*Pro Hac Vice*)
rmiller@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
Telephone: (512) 322-5200
*Attorneys for Intellectual Property Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INTELLECTUAL RESERVE, INC., a Utah corporation; and THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>Plaintiffs,<br><br>v.<br><br>OPEN STORIES FOUNDATION, an Arizona non-profit corporation; and JOHN P. DEHLIN, an individual,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF No. 41)**<br><br>Case No. 2:26-cv-00321<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. Plaintiffs' trademark claims (Counts I-III) are not barred by the First Amendment. ........ 4

A. The Lanham Act and the likelihood-of-confusion test. ........ 4

B. The *Rogers* Test. ........ 5

C. Defendants use MORMON STORIES as a trademark. ........ 6

D. *Jack Daniel's* is not limited to cases involving commercial products. ........ 12

E. Even if the *Rogers* test applied, Defendants' motion would fail. ........ 14

1. Artistic relevance cannot be determined from the face of the Complaint. ........ 15

2. The Complaint does not concede that Defendants' use of the contested marks is not explicitly misleading. ........ 16

II. Defendants' laches defense cannot be resolved on a motion to dismiss. ........ 19

A. The Complaint does not establish inexplicable delay or prejudice. ........ 20

1. Inexcusable delay is not evident from the Complaint. ........ 21

2. The Complaint does not show prejudice caused by inexcusable delay. ........ 24

B. Laches does not bar injunctive relief. ........ 25

C. Laches does not protect a willful infringer. ........ 26

III. Plaintiffs adequately pleaded their trademark infringement claims. ........ 27

IV. Plaintiffs have provided sufficient notice for the copyright infringement claims. ........ 30

CONCLUSION ........ 33

# TABLE OF AUTHORITIES

Page(s)

Cases

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) .......... 27

*Abraham v. Alpha Chi Omega*, 708 F.3d 614 (5th Cir. 2013) .......... 25

*Adams v. Grand Slam Club/Ovis*, 2014 WL 103782 (D. Colo. Jan. 10, 2014) .......... 28

*After II Movie, LLC v. WideOpenWest Fin., LLC*, 2025 WL 4696630 (D. Colo. Mar. 14, 2025) .......... 31

*Alfwear Inc. v. IBKUL Corp.*, 2025 WL 1370694 (D. Utah May 12, 2025) .......... 20

*Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556 (10th Cir. 1984) .......... 4

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200 (11th Cir. 2008) .......... 26

*Ariix LLC v. Usana Health Sciences, Inc.*, 2023 WL 2574319 (D. Utah, Mar. 20, 2023) 20, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000) .. 19

*Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934 (10th Cir. 1983) .......... 6, 7

*Boyd v. Yardley*, 2019 WL 7505682 (D. Utah Dec. 12, 2019) .......... 30

*Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513 (10th Cir. 1987) .......... 20

*Cellnet Comms., Inc. v. FCC*, 149 F.3d 429 (6th Cir. 1998) .......... 19

*Chauvin Int'l Ltd. v. Goldwitz*, 832 F. Supp. 35 (D. Conn. 1993) .......... 28

*Davis v. Blue Tongue Films*, 2024 WL 5182630 (9th Cir. Dec. 20, 2024) .......... 11

*DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837 (6th Cir. 2023) .......... 3, 21

*DayCab Co., Inc.*, 67 F.4th (cleaned up) .......... 25



4920-2991-3545.1

*DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) .......... 26

*Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ... 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989 WL 159628 (E.D. Cal. June 19, 1989) .. 19

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) .......... 20

*Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350 (M.D. Fla. 2012) .. 24

*Fort Knox Music, Inc. v. Baptiste*, 47 F. Supp. 2d 481 (S.D.N.Y. 1999) .......... 24

*Gordon v. Drape Creative Inc.*, 909 F.3d 257 (9th Cir. 2018) .......... 16, 17

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) .......... 26

*HomeVestors of Am., Inc. v. Warner Bros. Discovery*, 2023 WL 6880341 (D. Del. Oct. 18, 2023) .......... 11

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497 (2d Cir. 1996) .......... 4

*Hornady Mfg. Co. v. DoubleTap Ammunition*, 835 F. Supp. 2d 1150 (D. Utah 2011) ...... 20

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) .......... 24

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) .. 1, 2, 3, 4, 5, 6, 10, 13, 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) .......... 26

*Jenco LC v. Valderra Dev., LLC*, 2026 WL 575157 (D. Utah Mar. 2, 2026) .......... 20

*JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098 (9th Cir. 2016) .......... 6

*Jordache Enter. v. Hogg Wyld, Ltd.,* 828 F.2d 1482 (10th Cir.1987) .......... 4

*Libertarian National Committee, Inc. v. Saliba*, 116 F.4th 530 (6th Cir. 2024) .......... 12

*Lost International, LLC v. Germanotta*, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025) ... 13

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent., Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) .......... 5, 15

*Mattel, Inc. v. MCA Recs, Inc.*, 296 F.3d 894 (9th Cir. 2002) .......... 5

*McDonald's Corp. v. Mckinley*, 13 U.S.P.Q.2d 1895, 1989 WL 274414 (T.T.A.B. 1989) 28

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ......... 31

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989 (11th Cir. 2021) ........................................................................................ 25

*PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159 (11th Cir. 2019) ......................... 6

*Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) .............................. 11, 14

*Purcell v. Summers*, 145 F.2d 979 (4th Cir. 1944) ............................................................. 5

*Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417 (4th Cir 1998) ........... 26

*Richardson v. Kharbouch*, 2020 WL 1445629 (N.D. Ill. Mar. 25, 2020) .......................... 31

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ............................................. 2, 5, 15, 16

*Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715 (5th Cir. 2024) .................... 25

*San Francisco Ass'n for the Blind v. Industrial Aid for the Blind*, 152 F.2d 532 (8th Cir. 1946) ....................................................................................................... 25

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455 (4th Cir. 1996) ................................. 25

*Scott v. Mego Int'l. Inc.*, 519 F. Supp. 1118 (D. Minn. 1981) .......................................... 28

*Seventh Day Adventists v. Perez*, 97 F. Supp. 2d 1154 (S.D. Fla. 2000) ............................ 4

*Societe des Bains de Mer et du Cercle des Etrangers à Monaco v. MGM Mirage*, 2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008) ........................................................... 27

*Stouffer v. Nat'l Geographic Partners, LLC*, 460 F. Supp. 3d 1133 (D. Colo. 2020) ....... 14

*Swig Holdings v. Sodalicious, Inc.,* 2015 WL 5999896 (D. Utah Oct. 14, 2015) . 29, 30, 32

*TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997) .......................... 25

*Triplett v. LeFlore County*, 712 F.2d 444 (10th Cir. 1983) ............................................... 32

*Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) ............................................................................................................. 13

*Twin Peaks Prods., Inc. v. Publ'ns Int'l., Ltd.*, 996 F.2d 1366 (2d Cir. 1993)............ 15, 17

*Underwood v. Bank of Am. Corp.*, 2024 WL 1670592 (10th Cir. Apr. 18, 2024) ............... 6

*United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2d Cir. 1997) ........................................................................................ 12, 13

*Vans Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023)................................. 7

*Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) ................................... 30

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259 (S.D.N.Y. 1990)........... 18

*Young America's Found. v. Sitman*, 2025 WL 904689 (E.D. Va. Mar. 25, 2025)............. 10

Statutes

15 U.S.C. §1115(a) ........................................................................................ 27

15 U.S.C. § 1114(1) ........................................................................................ 4

15 U.S.C. § 1127.............................................................................................. 4

15 U.S.C. §§ 1125(a)(1), 1114(1)(a).................................................................. 5

Other Authorities

3 McCarthy on Trademarks § 23:51 ................................................................ 18

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:1 (5th ed. 2025) .................................................................................................... 4

4 McCarthy on Trademarks § 31:4 .................................................................. 26

4 McCarthy on Trademarks § 31:12 ................................................................ 24

4 McCarthy on Trademarks § 31:19 ............................................................ 21, 22

*Why Disclaimers Fail*, 84 Trademark Rep. 224 (1994) ........................................ 19

## INTRODUCTION

This case is not about silencing criticism. The Church's claims do not target the *content* of Defendants' speech at all. Nor is it about ownership or control of the word *Mormon*. The Church made this clear in its Complaint. Rather, this case is about eliminating the confusion caused by Defendants' mimicking the Church's trademarks and using its copyrighted images without permission. Mr. Dehlin can criticize the Church as he chooses, and he can use *Mormon* in connection with his podcast. But federal law prohibits Defendants from pilfering the Church's copyrighted images or using its trademarks in ways that are likely to cause people to believe that Defendants or their content are associated with the Church. The First Amendment protects Defendants' speech; it does not license them to appropriate the Church's marks and images.

* * * * *

The Court should deny Defendants' motion to dismiss. The "cardinal sin" under the Lanham Act is to "confuse consumers about source—to make (some of) them think that one producer's products are another's." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 (2023). The Church claims Defendants violated that statute, not simply by identifying as MORMON STORIES, but also by using logos, fonts, color schemes, copyrighted images, and other branding that misleadingly suggests affiliation with The Church of Jesus Christ of Latter-day Saints.




The Church will prove that many have, in fact, been confused by Defendants' infringement of the Church's intellectual property. They encounter *Mormon Stories* and begin to consume its content believing it contains Church-affiliated material, only to discover it is not what they were seeking. And this is intentional. In a 2022 *Mormon Stories* episode, a guest tells Mr. Dehlin he began listening because he believed *Mormon Stories* was Church-affiliated. Mr. Dehlin responds: "That was not why I named it that," but then confesses, "Okay, *maybe it was a little bit why I named it that*."[1]

The "usual battleground" for Lanham Act claims is the likelihood-of-confusion test. *Jack Daniel's*, 599 U.S. at 156. Hoping to avoid that battlefield, Defendants invoke *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which held that when the defendant has used the plaintiff's mark in the title of an "expressive work," the likelihood-of-confusion test gives way and courts ask only: (1) whether the defendant's use of the trademark has artistic relevance to the work, and if so, (2) whether the defendant's work explicitly misleads as to its source. *Id*. at 999.

Recently, however, the Supreme Court made clear that the *Rogers* test has no application "when an alleged infringer uses a trademark . . . as a designation of source for

---

[1] Mormon Stories: *Tommy "THETOMSTERS" & Madison Johnson* | *Ep. 1678* at 1:36:50 (Oct. 25, 2022), https://www.mormonstories.org/1678-tommy-madison-johnson/.

the infringer's own goods." *Jack Daniel's*, 599 U.S. at 153. Such use "does not receive special First Amendment protection" and thus the standard likelihood-of-confusion test applies. *Id*. at 145, 159. Because Defendants clearly use the contested marks as trademarks, they cannot rely on *Rogers* or any other test to "escape from the likelihood-of-confusion inquiry and [as] a shortcut to dismissal." *Id*. at 157, 159.

Defendants also assert that the Church's trademark claims should be dismissed based on laches. Laches is a fact-intensive affirmative defense that generally cannot be resolved on a motion to dismiss. The Church intends to prove that Defendants' infringement became increasingly more blatant over time until the Church had no choice but to take action to protect its intellectual property. Further, laches "does not prevent a plaintiff from obtaining injunctive relief," *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 856 (6th Cir. 2023), which is all Plaintiffs seek on their trademark claims.

The Church therefore asks the Court to deny Defendants' motion to dismiss.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## I. Plaintiffs' trademark claims (Counts I-III) are not barred by the First Amendment.

### A. The Lanham Act and the likelihood-of-confusion test.

A trademark is a "word, name, symbol, or device, or any combination thereof" used "to identify and distinguish" a person's goods or services "from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Trademarks "tell[] the public who is responsible for a product." *Jack Daniel's*, 599 U.S. at 146.

The Lanham Act protects a trademark "against infringement by use of colorable imitations of the mark which are 'likely to cause confusion, or to cause mistake, or to deceive.'" *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir. 1996) (quoting 15 U.S.C. § 1114(1)). The "keystone" of the Lanham Act is the "likelihood of confusion" test. *Jack Daniel's*, 599 U.S. at 147 (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:1 (5th ed. 2025)). It protects "not only" confusion about source, "but also . . . confusion that results from a mistaken belief in common sponsorship or affiliation." *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984). Such confusion occurs "when consumers make an incorrect mental association between the involved commercial products or their producers." *Jordache Enter. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1484 (10th Cir.1987) (quotation omitted).

"It is well established that religious institutions are entitled to the protection of the trademark laws . . . to the same extent as commercial enterprises." *Seventh Day Adventists v. Perez*, 97 F. Supp. 2d 1154, 1164 (S.D. Fla. 2000). Religious organizations rely on their

names, symbols, and other trademarks to identify themselves and convey messages important to their missions. *See Purcell v. Summers*, 145 F.2d 979, 985 (4th Cir. 1944) ("We have no doubt that these principles ordinarily applied in the case of business and trading corporations are equally applicable in the case of churches.").

### B. The *Rogers* Test.

The likelihood-of-confusion test is in the text of the Lanham Act. *See* 15 U.S.C. §§ 1125(a)(1), 1114(1)(a). However, in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the Second Circuit created a different test, holding that the Lanham Act does not apply to titles of "artistic works" unless the plaintiff can first show either (1) that the challenged use of a mark "has no artistic relevance to the underlying work," or (2) that it "explicitly misleads as to the source or the content of the work." *Id*. at 999.

In *Jack Daniel's*, 599 U.S. 140 (2023), the Supreme Court limited *Rogers* by holding that the likelihood-of-confusion test applies in *every* case where "the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark." *Id.* at 145. The Supreme Court noted that in *Rogers*, the trademark at issue was used in a "non-source-identifying way." *Id*. at 153-54. And courts adopting *Rogers* had also "confined it to similar cases, in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Id*. at 154 (citing *Mattel, Inc. v. MCA Recs, Inc.*, 296 F.3d 894 (9th Cir. 2002), *Louis Vuitton Malletier S.A. v. Warner Bros. Ent., Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012)). But these same courts had "routinely conduct[ed] likelihood-of-confusion analysis, without

mentioning *Rogers*, when trademarks are used as trademarks—*i.e.*, to designate source." *Jack Daniel's*, 599 U.S. at 155 (citing *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1102–1103, 1106 (9th Cir. 2016); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1164–65 (11th Cir. 2019)).

"The point is," the Supreme Court concluded, that *Rogers* "has always been a cabined doctrine" that "has applied only to cases involving non-trademark uses—or otherwise said, cases in which the defendant has used the mark at issue in a non-source identifying way." *Jack Daniel's*, 599 U.S. at 155-56 (cleaned up). The *Rogers* test "has not insulated from ordinary trademark scrutiny the use of trademarks as trademarks, to identify or brand a defendant's goods or services." *Id*. at 156 (cleaned up). This is true "even if the defendant is *also* making an expressive comment." *Id*. (cleaned up).

Thus, the first question that must be answered here is whether Defendants use MORMON STORIES as a trademark or solely for some non-source identifying purpose.

**C. Defendants use MORMON STORIES as a trademark.**

"A term or symbol is used as a trademark when the producer uses it to identify the source of his goods to the public and to distinguish those goods from others." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 938 (10th Cir. 1983). "Some of the common markers of whether a word, phrase, or picture is being used as a trademark are: larger-sized print, all capital letters or initial capitals, distinctive or different print style, color, and prominent position on label or in advertising." *Underwood v. Bank of Am. Corp.*, 2024 WL 1670592, at *4 (10th Cir. Apr. 18, 2024) (cleaned up). In *Beer Nuts*, the Tenth Circuit

concluded that the defendant was using "Brew Nuts" as a trademark because those words were "much larger than the other lettering on the package and in different type style," they were "set off in a distinctive red-brown oval, outlined in dark brown and topped by a conspicuous white circle containing a picture of an overflowing beer stein." *Beer Nuts*, 711 F.2d at 938.

Here, Defendants plainly use MORMON STORIES "as source identifiers" to "brand [their] own" services, which constitutes "quintessential trademark use." *Vans Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 138-39 (2d Cir. 2023) (cleaned up). For example, Defendants' logos have used[2] stylized lettering, all caps, a distinct font, light rays, and a distinct circle or square symbol:

ECF No. 1, Compl. ¶¶ 1, 33-35. Defendants' counterclaims repeatedly refer to their "logos" and "branding," and the public's recognition of those marks, and plead that "The MORMON STORIES podcast and Dehlin ***have become widely known as an independent***

[2] After Plaintiffs gave Defendants written notice of their infringement of Plaintiffs' trademarks and copyrights, Defendants made some alterations to their branding, including to the color of their logo and the light rays design. Other infringing elements remain, and Defendants have not taken responsibility for past infringement or given any assurance that they will not return resume their use of prior infringing elements.

***source*** of information, expression, and commentary." ECF No. 42, Answer & Counterclaim ¶¶ 9, 16, 18, 48-49, 67, 69, 71-85, 217-19, 221, 223-25, 238, 251-52, 267-68, 271, 275, 279, 280, 286, 296, 297, 303, 304 (emphasis added).

Despite Defendants' efforts to characterize MORMON STORIES as merely the title of an expressive work, the facts set forth in the Complaint foreclose that conclusion. Defendants identify as *Mormon Stories*—prominently using the MORMON STORIES mark and logos at the top of every page of their website, on hundreds of podcast episodes, on their YouTube page, on multiple other podcast platforms, in advertising and fundraising campaigns, on Facebook and other social media, and with their web address—and it is how Defendants are identified by the public. *See*, ECF No. 42, Answer & Counterclaim ¶¶ 43-54, 67, 69, 79-85; ECF No. 1, Compl. ¶¶ 31-43, 46-47.






ECF No. 1, Compl. ¶ 41.

Defendants' motion rests on the argument that they have trademark rights. *See*, *e.g.*, ECF No. 41, Mot. to Dismiss at p. 22 (claiming Defendants will be prejudiced "by upending more than 20 years of growth and investment to build *goodwill and public recognition* in the MORMON STORIES podcast") (emphasis added).

Each episode of the MORMON STORIES podcast is an individual work with its own unique title. And these hundreds of episodes collectively form a series promoted under the MORMON STORIES brand, which is clearly used as a trademark designating the source of each episode. The USPTO recognizes the distinction between the title of a single creative work, which cannot be registered as a trademark, and the title of a series, which can be registered. *See* U.S. Pat. & Trademark Off., Trademark Manual of Examining Procedure § 1202.08(c) (Oct. 2024) (recognizing right to trademark the title "of a series of . . . creative works" such as podcasts). Indeed, the USPTO has registered scores of podcast titles as trademarks. *See* **Exhibit A** (examples). Thus, recognizing that MORMON

STORIES is used as a trademark comports with both USPTO practice and marketplace realities. That Defendants have not registered MORMON STORIES as a trademark does not mean they are not using it as a trademark. *See Jack Daniel's*, 599 U.S. at 160 ("Registration of marks, you'll recall, is optional.").

Most importantly, Plaintiffs plausibly allege that Defendants use MORMON STORIES as a source identifying trademark, *see, e.g.*, ECF No. 1, Compl. ¶¶ 31-38, 42-43, 52, and that is sufficient at the pleading stage. *See Young America's Found. v. Sitman*, 2025 WL 904689, at *5 (E.D. Va. Mar. 25, 2025) (denying motion to dismiss based on the *Rogers* test "because the Complaint alleged that Defendants use Plaintiff's Marks as [source-]identifiers for Defendants' own goods and services"). Defendants also admit certain of these allegations. *See, e.g.*, ECF No. 42, Defs.' Answer ¶¶ 31–38, 42, 46.

Defendants' only contrary argument is that *Rogers* still applies because MORMON STORIES is "the title of an expressive work intertwined with the expressive content thereof." ECF No. 41, Mot. to Dismiss at p. 12. But that conflicts with *Jack Daniel's*, which held that the *Rogers* test does not apply "when a mark is used as a mark," even if "the use of a mark has other expressive content [or] conveys some message on top of source." *Jack Daniel's*, 599 U.S. at 157-59. Under *Jack Daniel's*, the inquiry is not whether the accused use is a title of an expressive work but whether the use functions as a source identifier. *Id.* If it does, the *Rogers* test does not apply.

And since *Jack Daniel's*, courts have routinely rejected the notion that titles of expressive works cannot also function as source identifiers. *See Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) (holding that title of online news publication *Punchbowl News* could simultaneously identify the expressive work and serve as a source-identifying trademark.); *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, 2023 WL 6880341 at *5 (D. Del. Oct. 18, 2023) ("WBD has not provided me with any authority holding that use of a mark in a title of a TV show is always non-source-identifying. And, in this case, HomeVestors has alleged facts to support the conclusion that WBD's use is source-identifying, rather than merely expressive."); *Davis v. Blue Tongue Films*, 2024 WL 5182630, at *2 (9th Cir. Dec. 20, 2024) (declining to apply *Rogers* to title of a film).[3]

[3] The ACLU's amicus brief argues that "[t]he word 'Mormon' is not a source identifier" and that "uses of the term … are not source identifying without more." ECF No. 65-1, ACLU Amicus Brief, p.5. Plaintiffs are not arguing that Defendants' use of the word "Mormon" standing alone is a source identifier. The relevant question under *Jack Daniel's* is whether Defendants use their MORMON STORIES marks as source identifiers; whether "Mormon" standing alone is generic or can be used descriptively or nominatively is irrelevant to that question (genericness is also a highly factual determination not appropriate for resolution here). As explained, Defendants plainly use the MORMON STORIES marks as source identifiers. The Electronic Frontier Foundation's amicus brief extols the virtues of the *Rogers* test (for trademark defendants), but it fails to address whether Defendants use their MORMON STORIES marks as source identifiers and does not explain why, after *Jack Daniel's*, the *Rogers* test should apply here. *See* ECF No. 66-1, EFF Amicus Brief.

**D. *Jack Daniel's* is not limited to cases involving commercial products.**

Defendants contend that *Jack Daniel's* held only that the *Rogers* test does not apply to "the expressive design of a commercial consumer *product*" like the dog toy at issue in that case. ECF No. 41, Mot. to Dismiss at pp. 11-12. Nothing in *Jack Daniel's* supports that argument.

The defendants in *Libertarian National Committee, Inc. v. Saliba*, 116 F.4th 530 (6th Cir. 2024), made that argument and the court rejected it. *Id*. at 534. In that case, Libertarian National Committee sued dissenting members of a Michigan affiliate who had broken off and held themselves out as the official Michigan affiliate. *Id*. at 532. The defendants argued that *Jack Daniel's* did not apply because it "contemplated trademark infringement in the context of commercial products." *Id*. at 535. The Sixth Circuit rejected the argument, noting that while political speech typically receives "heightened protection under the First Amendment," after *Jack Daniel's*, "where a defendant uses the trademark as a source identifier, the Lanham Act does not offend the First Amendment by imposing liability" even "in the political arena." *Id*. at 535-36.

The Supreme Court itself rejected any "commercial product" limitation in *Jack Daniel's* with its unequivocal holding and by approvingly citing cases from expressive contexts that did not apply the *Rogers* test, such as *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2d Cir. 1997). That was a trademark action brought by United We Stand America, which had trademarked the slogan, "United We Stand America." *Id*. at 88. After friction within the group, the defendant created an offshoot

political coalition, "United We Stand, America New York," which also used the slogan to engage in political activities. *Id*. The Second Circuit held that the *Rogers* test did not apply because the offshoot group had used the slogan "as a source identifier" for the group's own political services. *Id*. at 92.

In *Jack Daniel's*, the Supreme Court said the Second Circuit correctly applied the likelihood-of-confusion test in *United We Stand America* because the offshoot group was using the slogan "as a mark." *Jack Daniel's*, 599 U.S. at 155. This shows that *Jack Daniel's* clearly did not limit its holding to the context of commercial products. In such cases, "the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Id*. at 159.

Defendants cite two cases to defend their position, but neither supports their misreading of *Jack Daniel's*. Defendants first cite *Lost International, LLC v. Germanotta*, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025), but that case relied on the very Ninth Circuit precedent that *Jack Daniel's* overturned. In *Lost International*, the court relied on the fact that the Ninth Circuit had held—before *Jack Daniel's*—that the *Rogers* test applied to all expressive works. *Id*. at *4 (citing *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017)). But *Jack Daniel's* rejected "the Ninth Circuit's expansion of *Rogers*" to all expressive works. *Jack Daniel's*, 599 U.S. at 158 (cleaned up). As the Ninth Circuit said after *Jack Daniel's*: "To the point that our precedents previously held that *Rogers* applies when an expressive mark is used as a mark—and that

the only threshold for applying *Rogers* was an attempt to apply the Lanham Act to something expressive—the Supreme Court has now made clear that this is incorrect." *Punchbowl, Inc.*, 90 F.4th at 1031.

The other case Defendants cite is *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024), which held that the *Rogers* test applied there because "Defendants are undoubtedly using 'Down to Earth' simply to identify the subject matter and tone of the Series" and not as a trademark. *Id*. at *4. Whether or not that conclusion was factually correct, the legal conclusion is consistent with *Jack Daniel's*, and the case does nothing to support Defendants' position here given their clear use of the MORMON STORIES marks as trademarks.

### E. Even if the *Rogers* test applied, Defendants' motion would fail.

Given Defendants' clear use of MORMON STORIES as a trademark, and the clear holding of *Jack Daniel's*, there is no reason to address whether Defendants would win if the *Rogers* test did apply. We will briefly do so anyway because, even if the *Rogers* test applied, Defendants' motion should be denied.[4]

[4] Plaintiffs will not address *Stouffer v. Nat'l Geographic Partners, LLC*, 460 F. Supp. 3d 1133 (D. Colo. 2020), other than to note that *Jack Daniel's* prohibits use of its test the same as it does *Rogers*. *See Jack Daniel's*, 599 U.S. at 159 (rejecting all "threshold inquir[ies]" when a trademark is used for source identification).

To obtain dismissal under the *Rogers* test, a defendant must show that its use of a contested mark is (1) artistically relevant to the underlying work, and (2) not "explicitly misleading" as to the source or sponsorship of that work. *Rogers*, 875 F.2d at 999.

**1. Artistic relevance cannot be determined from the face of the Complaint.**

Even if the *Mormon Stories* podcast were considered an expressive work to which the MORMON STORIES title is "artistically relevant," unlike *Rogers*, this case does not involve a title alone. Plaintiffs allege that "Defendants adopted a blue MORMON STORIES logo with a light-rays design prominently used by the Church," and also used "confusingly similar color, font, and other design elements" in a manner "calculated to imitate the Church's logo." ECF No. 1, Compl. ¶ 1. A title that "might otherwise be permissible under *Rogers*" can still "violate[ ] the Lanham Act when displayed in a manner that conjures up a visual image prominently associated with the work bearing the mark that was copied." *Twin Peaks Prods., Inc. v. Publ'ns Int'l., Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993). For that reason alone, Defendants cannot pass the first part of the *Rogers* test at the motion-to-dismiss stage.

Furthermore, the *Rogers* test does not apply when confusion—rather than artistry—was the point. The *Rogers* test requires that "the defendant intended an artistic [use] as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will." *Louis Vuitton Malletier S.A.*, 868 F. Supp. 2d at 178; *see*

*also Rogers*, 875 F.2d at 1001 (artistic relevance prong is not met where the relevant trademark was "chosen just to exploit the publicity value of" the plaintiffs' mark).

Plaintiffs plead that Defendants "use[ ] the name MORMON STORIES for its podcast and business . . . *with the intent to cause confusion* among consumers *and to mislead* the consuming public into believe that Mormon Stories is affiliated or associated with, endorsed or approved or sponsored by, or otherwise connected with the Church." ECF No. 1, Compl. ¶ 45 (emphasis added). These allegations preclude application of the *Rogers* test on a motion to dismiss.

**2. The Complaint does not concede that Defendants' use of the contested marks is not explicitly misleading.**

Even where the use of a trademark has artistic relevance to an underlying artistic work, the *Rogers* test does not protect such use if it "explicitly misleads as to the source or the content of the work." *Rogers*, 875 F.2d at 999. This second part of the *Rogers* test is also generally not resolvable on a motion to dismiss. It "is not a mechanical test—'all of the relevant facts and circumstances' must be considered." *Gordon v. Drape Creative Inc.*, 909 F.3d 257, 269 (9th Cir. 2018) (quoting *Rogers*, 875 F.2d at 1000 n.6).

Defendants argue that they have never "claim[ed] an official relationship or affiliation with the Church." ECF No. 41, Mot. to Dismiss at p. 7. But courts reject a rigid requirement that to be "explicitly misleading" the defendant must make an "affirmative statement of the plaintiff's sponsorship or endorsement." *Gordon*, 909 F.3d at 269. "In

some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." *Id*. at 270.

Also, the explicitly-misleading test is not a substitute for likelihood of confusion. Rather, it simply means that "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods., Inc.*, 996 F.2d at 1379. Thus, even if the *Rogers* test applied, Plaintiffs would have to be given the opportunity to establish compelling evidence of likelihood of confusion. The Complaint plausibly alleges high levels of actual confusion and Defendants' intent to cause confusion. *See*, *e.g.*, ECF No. 1, Compl. ¶¶ 34, 40-41, 43-48, 54.

Defendants finally argue that the deployment of disclaimers on their websites demonstrates that their use of the contested marks is not explicitly misleading. ECF No. 41, Mot. to Dismiss at pp. 6-7. But there are serious questions about whether Defendants' disclaimers accomplish anything, and some reason to believe they contribute to confusion.

This disclaimer is on the bottom of www.mormonstories.org, after scrolling down the equivalent of four pages (ECF No. 1-4 at p. 261):



One would have to be actively searching for this disclaimer to find it. On *Mormon Stories*' YouTube and Spotify pages, you have to click a link to expand information about *Mormon Stories* to see the disclaimer. This is from Spotify (no disclaimer visible):




Only after clicking on "Show more" under the "About" section and reading to the end do you get to the disclaimer:




And when a *Mormon Stories* "reel" comes across a YouTube, Instagram, or other social media feed (potentially Defendants' most common way of reaching consumers), there is no disclaimer.

"Clearly, use of a relatively inconspicuous disclaimer will not prevent likely confusion." 3 McCarthy on Trademarks § 23:51; *see also Weight Watchers Int'l, Inc. v.*

*Stouffer Corp.*, 744 F. Supp. 1259, 1276-77 (S.D.N.Y. 1990) (disclaimer failed to alleviate likelihood of confusion due to small print and non-prominent placement). And consumer surveys also show that "disclaimers relying on brief negator words such as 'no' and 'not' are not likely to be effective." Jacoby & Szybillo, *Why Disclaimers Fail*, 84 Trademark Rep. 224, 237 (1994). Further, a "low-involvement" disclaimer like this can actually "contribute to source confusion" because they "often are not read with great care." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 1989 WL 159628, at *19 (E.D. Cal. June 19, 1989). A person may glance, see only the Church's name, and assume an affiliation.

This all means the explicitly-misleading prong of the *Rogers* test cannot be resolved on a motion to dismiss. Regardless, for the reasons explained above, the *Rogers* test has no application here. This case must be decided based on the likelihood-of-confusion test.

## II. Defendants' laches defense cannot be resolved on a motion to dismiss.

Defendants' motion invokes one other defense: laches.[5] But it is highly factual and generally cannot be resolved on a motion to dismiss. Moreover, laches does not bar injunctive relief, and cannot preclude Plaintiffs' request for such relief.

---

[5] The ACLU's amicus brief raises the fair-use defense. ECF No. 65-1, ACLU Amicus Brief, pp. 12-18. Defendants did not raise that issue. "While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties." *Cellnet Comms., Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1145 n.2 (10th Cir. 2000) (striking arguments in amicus brief "that have never been advanced by the parties"). For that same reason, the court should disregard arguments in the Electronic Frontier Foundation's amicus brief about whether MORMON alone is generic (these

"By its very nature" laches is "fact intensive and depends on the unique circumstances of each case." *Hornady Mfg. Co. v. DoubleTap Ammunition*, 835 F. Supp. 2d 1150, 1153 (D. Utah 2011) (quotation omitted). It can be resolved on a Rule 12(b)(6) motion only when "the complaint itself" alleges "the factual basis" for all its elements. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

Here, the following relevant factual issues cannot be resolved from the Complaint: whether Defendants' use changed over time; whether the likelihood of confusion increased over time; whether Plaintiffs had reasonable excuses for delay; whether Defendants acted in good faith; whether Defendants suffered cognizable prejudice from Plaintiffs' delay; and whether laches would bar all relief or only some remedies.

### A. The Complaint does not establish inexplicable delay or prejudice.

Laches requires: (1) inexcusable delay in filing suit; (2) resulting in prejudice to the defendant.[6] *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 523 (10th Cir. 1987). The face of the Complaint establishes neither.

---

arguments also ignore the panoply of Plaintiffs' pleaded MORMON Marks). ECF No. 66-1, EFF Amicus Brief pp.14-15.

[6] Defendants note that some circuits apply a presumption that a claim is barred by laches if it is filed later than the most analogous statute of limitations in state law. ECF No. 41, Mot. to Dismiss at p. 16. The Tenth Circuit has not adopted that presumption and this Court's recent decisions have not applied it. *See Jenco LC v. Valderra Dev., LLC*, 2026 WL 575157, at *7-8 (D. Utah Mar. 2, 2026); *Alfwear Inc. v. IBKUL Corp.*, 2025 WL 1370694, at *24-25 (D. Utah May 12, 2025); *Ariix LLC v. Usana Health Sciences, Inc.*, 2023 WL 2574319, at *6 (D. Utah, Mar. 20, 2023).

### 1. Inexcusable delay is not evident from the Complaint.

Defendants argue that the laches timer started ticking in 2005, when Dehlin began using *Mormon Stories* for his podcast's title. ECF No. 41, Mot. to Dismiss at p. 17. But "[l]aches is not measured from defendant's first unpermitted use of the contested mark." 4 McCarthy on Trademarks § 31:19. It requires *inexcusable* delay.

"The doctrine of progressive encroachment excuses delay, allowing a plaintiff to wait to bring an action until the likelihood of confusion looms large." *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 854 (6th Cir. 2023) (cleaned up). A plaintiff can show that "although it might have been justified in bringing suit earlier . . . certain factors now exist that have prompted it to do so." *Id*. (cleaned up). This might include "the growing presence of Defendants' allegedly infringing products in the market" and "the effect of that growth on the likelihood of confusion" such that the infringement ripened over time "into one sufficiently colorable to justify litigation." *Id*. at 856 (cleaned up).

*Mormon Stories* began as a small podcast. *See* 4 McCarthy on Trademarks § 31:19 ("A period of low profile sales by a fledgling business should not be counted toward laches."). Its reach has increased significantly in recent years, including since the adoption of the blue light-rays logo in 2022.[7] *See id*. ("The trademark owner is justified in delaying

[7] For example, Defendants' website states: "In 2023 alone, our content received over 45 million views and has been featured in major media outlets—further amplifying voices and stories that matter." https://www.mormonstories.org/home/about/.

the unleashing of litigation until it is seen if the infringing fledgling business or product line will survive, let alone significantly impact on plaintiff's trademark rights.").

The infringement also became more egregious over time with Defendants' use of Church-owned or affiliated images, fonts, and colors, all of which (as alleged in the Complaint) was to intentionally create confusion. Around 2016, the Church adopted a light-rays motif. "Plaintiffs use the Light-Rays Design Marks in various colors," but most prominently in blue. ECF No. 1, Compl. ¶¶ 20, 23.

Defendants followed suit in 2022 when Mormon Stories began using a blue light-rays logo:

*Id.*, ¶ 34; *cf.* 4 McCarthy on Trademarks § 31:19 ("[A]ny change in the format or method of use of the mark . . . should be sufficient to excuse a prior delay.").

In April 2020, the Church adopted the Christus Symbol as its official logo and began prominently using it. *Id.*, ¶¶ 21-24.




Thereafter, the Christus Symbol began appearing in the Mormon Stories header and main "Welcome" video thumbnail in their branding and advertising. *See id*. ¶¶ 40-42.




Defendants' earlier use of MORMON STORIES also does not justify their more recent misappropriation of the Christus Logo, the Light-Rays Design, and images belonging to the Church. Instead, the newer, broader, and more egregious misappropriation, along with growing confusion, negates laches, or at the very least raises factual issues that cannot be resolved on a Rule 12(b)(6) motion.

### 2. The Complaint does not show prejudice caused by inexcusable delay.

The Complaint also does not show that Defendants were prejudiced by any delay. Prejudice exists when the defendant "has changed his position in a way that would not have occurred if the plaintiff had not delayed" in filing suit. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999). "[M]ere expenditures in promoting, advertising, and/or selling an infringing mark does not constitute undue prejudice for the purpose of laches." *Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350, 1366 (M.D. Fla. 2012). "If prejudice could consist merely of expenditures in promoting the infringing mark, then relief would have to be denied in practically every case of delay." 4 McCarthy on Trademarks § 31:12. Likewise, "no legally recognizable 'prejudice' occurs merely by the natural growth of the defendant's customer base." *Id.*

Prejudice is highly fact specific and requires discovery. *See Ariix LLC*, 2023 WL 2574319, at *6 ("The resolution of laches is typically a fact intensive affirmative defense inquiry that is not resolved at the motion to dismiss stage."); *Fort Knox Music, Inc. v. Baptiste*, 47 F. Supp. 2d 481, 484 n.1 (S.D.N.Y. 1999) (declining to dismiss because "the pleadings do not afford the Court sufficient basis for weighing the reasons for [plaintiff's] delay against the prejudice to [defendant] caused by the delay"). Plaintiffs' allegations do not establish that Defendants were prejudiced, and Plaintiffs should be allowed to test any allegation of prejudice through discovery.

### B. Laches does not bar injunctive relief.

Dismissal would be improper even if Defendants could prove inexcusable delay and prejudice because, although "laches bars damages that occurred before the filing date of the lawsuit," it "does not prevent a plaintiff from obtaining injunctive relief." *DayCab Co., Inc.*, 67 F.4th at 856 (cleaned up); *see also Abraham v. Alpha Chi Omega*, 708 F.3d 614, 625 (5th Cir. 2013) ("[L]aches alone ordinarily will not bar . . . injunctive relief.") (cleaned up); *San Francisco Ass'n for the Blind v. Industrial Aid for the Blind*, 152 F.2d 532, 537 (8th Cir. 1946) (delay "will not prevent the issuance of an injunction against further infringement").[8]

Courts hold that laches does not bar injunctive relief when there is strong evidence of likely confusion. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996) ("[L]aches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion."); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 886 (7th Cir. 1997) (laches inapplicable if senior user can show "inevitable confusion"); *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1011 (11th Cir. 2021) (delay will not preclude injunction "if there is strong evidence of likely or actual confusion"). In short, "strong proof of likelihood of

---

[8] Even a lengthy delay will not bar injunctive relief. *See Abraham*, 708 F.3d at 626 (several decades delay did not bar permanent injunction); *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 725-26 (5th Cir. 2024) (denying award of profits after 10-year delay but granting injunction against use of ROLEX mark on infringer's product).

confusion—indeed, actual confusion—trumps the defenses of laches and acquiescence." *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir 1998). Plaintiffs have alleged such confusion. *E.g.*, ECF No. 1, Compl. ¶¶ 47, 54.

One reason for this reluctance to deny injunctive relief based on laches is that even if the plaintiff delays, the public still "deserves not to be led astray by the use of inevitably confusing marks." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). Thus, if there is evidence of likely confusion, "then it seems perverse to deny an injunction . . . just because the trademark owner was remiss in not suing the infringer sooner." 4 McCarthy on Trademarks § 31:4. Further, an injunction can often cure the problem without harming the defendant. "Often the defendant will not be prejudiced by a bar on future conduct." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002).

In short, even if Plaintiff could establish laches, there is relief available that is beyond the reach of laches.

**C. Laches does not protect a willful infringer.**

Plaintiffs must also be given the opportunity to prove that Defendants are willful infringers, because laches "does not apply . . . in cases of willful infringement." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015); *see also Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (an "intention to confuse undermines any claim of good faith" making the equitable defense of laches unavailable). Plaintiffs allege intentional infringement, *see* ECF No. 1, Compl. ¶¶ 1,40-48, 60, which defeats laches at this stage.

*See Societe des Bains de Mer et du Cercle des Etrangers à Monaco v. MGM Mirage*, 2008 WL 4974800 *6 (S.D.N.Y. Nov. 24, 2008) (declining to dismiss because the complaint "alleges intentional infringement," which "would avoid application of the laches defense altogether").

**III. Plaintiffs adequately pleaded their trademark infringement claims.**

Defendants raise two pleading challenges to Plaintiffs' trademark claims—the Complaint does not: (1) adequately plead a family of marks, or (2) correlate every accused use with every asserted mark. Neither argument supports dismissal.

To plead trademark infringement, a plaintiff must allege: "(1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013). The Complaint adequately pleads each element.

First, the Complaint specifically identifies Plaintiffs' trademark rights in the MORMON-formative marks (ECF No.1, Compl. ¶¶ 15-19, 28), the Light-Rays Design mark (*id*. ¶ 20, 23-24, 28), the Christus Symbol (*id*. ¶¶ 21, 28), and the MORMON family of marks (*id*. ¶19).

Second, Plaintiffs plead use sufficient to establish common law rights in each individual mark. *Id*. ¶¶ 15-27. Plaintiffs also plead trademark registrations for each individual mark (*id*. ¶ 28), which provide presumptions of validity. 15 U.S.C. §1115(a).

Moreover, the Complaint specifically pleads that the MORMON marks have long been used and promoted together such that the public recognizes MORMON as a common characteristic indicating source (*id.* ¶ 19), which is sufficient to establish rights in a family. "A family of marks exists when one common family characteristic appears as part of all the marks used, and the owner has sufficiently advertised or promoted the marks to establish, in the minds of the public or the trade, a recognition that he possesses a 'family of marks' identified by the common characteristic." *Adams v. Grand Slam Club/Ovis*, 2014 WL 103782, at *3 (D. Colo. Jan. 10, 2014) (citation omitted). Rule 8 does not require Plaintiffs to identify specific advertisements, promotions, or other evidence to plausibly state and put Defendants on notice of a family of marks claim. The footnote in *Scott v. Mego Int'l. Inc.*, 519 F. Supp. 1118, 1128 n.6 (D. Minn. 1981), (ECF No. 41, Mot. to Dismiss at p. 24) does not suggest otherwise, and merely repeats the above standard for establishing a family of marks.

The Complaint also alleges specific facts establishing Plaintiffs' priority, including that the family of MORMON Marks predates Defendants' use. *See* ECF No. 1, Compl. ¶¶ 13, 15, 19-21, 27, 32, 34, 44, 48. Numerous marks in the family were used before Defendants' use, and courts recognize that a family of marks can develop over time—even after a junior user enters the market. *See Chauvin Int'l Ltd. v. Goldwitz*, 832 F. Supp. 35, 38 (D. Conn. 1993) ("This family of marks covers both those marks which came into existence before and after defendants entered the market."); *McDonald's Corp. v. Mckinley*,

13 U.S.P.Q.2d 1895, 1989 WL 274414, at *3 (T.T.A.B. 1989) ("[I]t is not necessary, to support the family of marks theory, that all members of the 'family' be in existence prior to the entry in the field of another with a mark containing that common portion.").

Third, the Complaint also identifies Defendants' use of the MORMON STORIES marks and logos and provides specific examples of such uses, (ECF No. 1, Compl. ¶¶ 33-38), Defendants' use of other MORMON-formative names (*id*. ¶38), a light-rays design mark (*id*. ¶¶ 40, 46), and the Christus Symbol (*id*. ¶ 41). The Complaint specifically alleges that Defendants' use of those marks has caused and is likely to cause confusion. *Id.* ¶¶ 52-56. Plaintiffs also allege that Defendants have used other elements to exacerbate and capitalize on this confusion, including imagery of Church leaders presented in a manner that suggests endorsement and other images that the public recognizes and associates with the Church. *Id.* ¶¶ 39-41.

The Complaint adequately puts Defendants on notice of the infringing conduct. Indeed, Defendants' motion and their Answer demonstrate that they understand the claims. *See Swig Holdings v. Sodalicious, Inc.,* 2015 WL 5999896, at *2 (D. Utah Oct. 14, 2015) ("As evidenced by the evidentiary nature of Sodalicious's arguments in the pending motion, Sodalicious has notice of and understands Swig's claims.").

Defendants' motion rests on the mistaken premise that to state a claim, Plaintiffs must match each accused use to each asserted trademark. Likelihood of confusion is an inherently context-dependent inquiry that turns on the overall commercial impression

created in the actual marketplace rather than on isolated, side-by-side comparisons. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1155 (10th Cir. 2013) ("[W]e do not independently examine each syllable of the marks but consider the marks as a whole as they are encountered by consumers in the marketplace.") (cleaned up). Rule 8 requires fair notice, not a one-to-one mechanical comparison of every accused use to every asserted mark in exhaustive detail. *Swig Holdings,* 2015 WL 5999896, at *1-2 (rejecting the argument that there was not sufficient notice because the complaint did not "correlate" infringing elements). Plaintiffs have satisfied that standard.

## IV. Plaintiffs have provided sufficient notice for the copyright infringement claims.

The only alleged defect Defendants identify in the copyright claims is that Plaintiffs did not plead when Defendants commenced their infringement of Plaintiffs' works. Defendants rely on *Boyd v. Yardley*, 2019 WL 7505682, at *3 (D. Utah Dec. 12, 2019). In *Boyd*, the complaint was so lacking in detail that it was "not clear which specific original works [were] the subject of the claim." *Id.* at 3. But Defendants' contention here that Plaintiffs have not identified when the infringements were "first published" or "how long any image or whether any particular use was removed before suit" is a far cry from *Boyd* and the notice pleading standard established by the rules.

Pleading copyright infringement does not require a plaintiff to identify the specific time when infringement occurred; it only requires a plaintiff to plead information sufficient to put a defendant on notice of the accused conduct. Copyright claims are not subject to a

heightened pleading standard. *See After II Movie, LLC v. WideOpenWest Fin., LLC*, 2025 WL 4696630, at *3 (D. Colo. Mar. 14, 2025) (noting that "cases hold that complaints alleging continuous or ongoing copyright infringement need not detail each specific infringing act to satisfy the plausibility standard" and rejecting the extension of *Boyd* to require more specific allegations of the timeframe of the copyright infringement) (cleaned up). Instead, particularly when the claims are based on allegations of continuous, ongoing, or voluminous online infringement, a complaint need only identify representative examples. *See id.* (citing *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120-21 (C.D. Cal. 2001) (denying a motion to dismiss and rejecting the plaintiff's argument that the complaint was insufficient because it did not to state "every copyright relied on, every individual image . . . that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement"). That specific dates are not required is logical, as knowledge of those dates is typically in a defendant's possession. *Richardson v. Kharbouch*, 2020 WL 1445629, at *8 (N.D. Ill. Mar. 25, 2020) ("[G]iven that the Defendants are much more likely to know . . . the dates [they] performed, distributed, or reproduced the allegedly infringing song, it makes little sense to force [the plaintiff] to identify specific dates at the pleading stage.").

Here, the Complaint sufficiently identifies Plaintiffs' rights and Defendants' infringing conduct. Although Plaintiffs gathered evidence of the infringements in the several months leading up to the filing of the lawsuit, Defendants' content is not static.

Some asserted images may have been removed or changed, and because of those potential changes, Plaintiffs may be unable to determine the precise date each infringement began. Regardless, the infringements were ongoing and occurring leading up to when the Complaint was filed.

The Complaint contains the general timeframe of the infringements, including that many of the infringements were live during pre-suit settlement discussions and additional infringements occurred in the months between those discussions and the filing of the lawsuit. ECF No. 1, Compl. ¶ 51. Moreover, Plaintiffs have accused Defendants of numerous instances of online copyright infringement and anticipate discovery will show additional infringements (*id.* ¶ 39), and Plaintiffs have provided the "representative" allegations other courts have found satisfies the pleading standard for copyright claims.

Finally, even if the Court concludes that additional factual detail is required, Plaintiffs should be given leave to amend. *Triplett v. LeFlore County*, 712 F.2d 444, 446 (10th Cir. 1983).[9]

---

[9] Defendants ask alternatively for a more definite statement pursuant to Rule 12(e). Rule 12(e) is reserved for pleadings so vague or ambiguous that a defendant cannot reasonably prepare a response, not merely for a claimed lack of factual detail. *Swig Holdings*, 2015 WL 5999896, at *1-2 (denying a Rule 12(e) motion where the complaint pleaded the essential elements, identified the asserted trademarks and trade dress, and described the allegedly infringing conduct, and explaining that additional detail should be obtained through discovery).

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny Defendants' motion.

DATED: August 20, 2026

FOLEY & LARDNER LLP

*/s/ David J. Jordan*

David J. Jordan
David L. Mortensen
Timothy V. Hansen
Euigin K. Pace

PIRKEY BARBER PLLC
Tyson D. Smith (*Pro Hac Vice*)
Stephen P. Meleen (*Pro Hac Vice*)
Ryan J. Miller (*Pro Hac Vice*)

*Attorneys for Plaintiffs Intellectual Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints*

## CERTIFICATE OF COMPLIANCE

As required by D.U.Civ.R. 7-1(a), the undersigned certifies that this Memorandum in Opposition to Plaintiff's Motion to Dismiss contains 7,740 words and complies with DUCivR 7-1(a)(4).

**CERTIFICATE OF SERVICE**

I hereby certify that I am employed by the law firm Foley & Lardner LLP and that, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF No. 41)** was delivered via the Court's CM/ECF system, which electronically transmitted notice of such filing to all counsel of record on this the 20th day of July, 2026, as follows.

Mark A. Miller
Elliot Hales
Olivia McQuarrie
DORSEY & WHITNEY LLP
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111

Mike Keyes
DORSEY & WHITNEY LLP
701 Fifth Ave., Suite 6100
Seattle, WA 98104-7043

Elissa Brockbank Reese
POTOMAC LAW GROUP, PLLC
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006

Ryan E. Hatch
HATCH LAW PC
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066

*Attorneys for Defendants Open Stories Foundation and John P. Dehlin*

*/s/ Stacy Kamaya*