Mark A. Miller (#9563)
miller.mark@dorsey.com
Elliot Hales (#16684)
hales.elliot@dorsey.com
Olivia McQuarrie (#19621)
mcquarrie.olivia@dorsey.com
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373

Mike Keyes (pro hac vice)
keyes.mike@dorsey.com
**DORSEY & WHITNEY LLP**
701 Fifth Ave., Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-8800
Facsimile: (206) 903-8820

Elissa Brockbank Reese (pro hac vice)
ereese@potomaclaw.com
**POTOMAC LAW GROUP, PLLC**
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006
Telephone: (202) 558-5557
Facsimile: (202) 318-7707

Ryan E. Hatch (pro hac vice)
ryan@hatchlaw.com
**HATCH LAW PC**
13323 Washington Blvd., Suite 302
Los Angeles, CA 90066
Telephone: (310) 279-5079
Facsimile: (310) 693-5328

*Attorneys for Defendants Open Stories Foundation and John P. Dehlin*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| INTELLECTUAL RESERVE, INC., a Utah non-profit corporation; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>Plaintiffs,<br><br>vs.<br><br>OPEN STORIES FOUNDATION, an Arizona non-profit corporation; JOHN P. DEHLIN, an individual,<br><br>Defendants. | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Civil No. 2:26-CV-00321<br><br>Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS


I. THE CHURCH'S TRADEMARK CLAIMS VIOLATE DEFENDANTS' FIRST AMENDMENT RIGHTS ........ 2

A. *Jack Daniel's* Does Not Preclude Defendants' First Amendment Defense ........ 2

B. Plaintiffs' Claims Should be Dismissed under *Rogers* and *Stouffer* ........ 4

II. PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES ........ 6

A. Laches Is Established by the Complaint Allegations ........ 6

B. The Church's Twenty-Year Delay Is Inexcusable ........ 7

1. Defendants' activity was insufficient to reset the laches clock ........ 7

2. Even if the clock resets in 2022, the Church's delay is inexcusable ........ 8

3. At minimum, laches bars claims against pre-2022 conduct ........ 8

C. Defendants Have Suffered Substantial Prejudice ........ 9

D. Laches Bars Injunctive Relief in This Case ........ 9

E. Plaintiffs' Willful Infringement Allegations Do Not Defeat Laches ........ 10

III. THE CHURCH SHOULD AMEND ITS PLEADED TRADEMARK THEORIES ........ 10

IV. PLAINTIFFS' COPYRIGHT CLAIM SHOULD BE DISMISSED ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*After II Movie v. Wideopenwest Fin.*,
2025 WL 4696630 (D. Colo. Mar. 14, 2025) ....................11

*Albion Int'l, Inc. v. Am. Int'l Chem., Inc.*,
No. 2:10-cv-00785, 2012 WL 3776866 (D. Utah Aug. 30, 2012)....................8

*Biodiversity Conservation All. v. Jiron*,
762 F.3d 1036 (10th Cir. 2014) ....................9

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015) ....................10

*Gordon v. Drape Creative Inc.*,
909 F.3d 257 (9th Cir. 2018) ....................5

*GTE Corp. v. Williams*,
649 F. Supp. 164 (D. Utah 1986), *aff'd*, 904 F.2d 536 (10th Cir. 1990) ....................9

*Harley-Davidson, Inc. v. Grottanelli*,
164 F.3d 806 (2d Cir. 1999)....................10

*Henderson v. Lindland*,
2013 WL 1181957 (C.D. Cal. Mar. 21, 2013)....................10

*Hornady Mfg. Co. v. Doubletap, Inc.*,
746 F.3d 995 (10th Cir. 2014) ....................10

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
191 F.3d 813 (7th Cir. 1999) ....................9, 10

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023)....................2, 4

*Kars 4 Kids Inc. v. Am. Can!*,
98 F.4th 436 (3d Cir. 2024) ....................7, 9

*Kellogg Co. v. Exxon Corp.*,
209 F.3d 562 (6th Cir. 2000) ....................8

*Klein-Becker USA, LLC v. Prod. Quest Mfg.*,
429 F. Supp. 2d 1248 (D. Utah 2005)....................5

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
868 F.Supp.2d 172 (S.D.N.Y. 2012)....................5

*Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*,
2012 WL 3192806 (D. Utah, Aug. 6, 2012)....................4

*Matal v. Tam*,
582 U.S. 218 (2017)....................2, 4

*Miller v. Glenn Miller Productions, Inc.*,
454 F.3d 975 (9th Cir. 2006)....................10

*Moss v. Kopp*,
559 F.3d 1155 (10th Cir. 2009)....................5

*Oriental Fin. Gp., Inc. v. Cooperativa de Ahorro Y Crédito Oriental*,
698 F.3d 9 (1st Cir. 2012)....................7

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018)....................9

*Societe des Bains de Mer v. MGM Mirage*,
2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008)....................10

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*,
465 F.3d 1102 (9th Cir. 2006)....................7, 10

*Univ. of Kan. V. Sinks*,
565 F. Supp. 2d 1216 (D. Kan. 2008)....................5

*What A Burger of Va, Inc. v. Whataburger, Inc.*,
357 F.3d 441 (4th Cir. 2004)....................8

*Wisconsin Cheese Group, Inc. v. V & V Supremo Foods, Inc.*,
537 F. Supp. 2d 994 (W.D. Wis. 2008)....................7, 8

**Statutes**

Lanham Act....................2, 3

Defendants present this memorandum in support of their Motion to Dismiss (ECF 41; "Motion") and in reply to the Memorandum in Opposition (ECF 71; "Opposition" or "Opp.") filed by Plaintiffs (collectively, "the Church").

## INTRODUCTION

The Church begins its Opposition explaining that (a) Defendants' use of MORMON STORIES does *not* alone violate its trademark rights, (b) the Church's claims are based solely on *combining* design elements in 2022 with the podcast title, (c) the Church seeks *only* injunctive relief, not damages, for trademark claims, and (d) Defendants are free to "use *Mormon* in connection with [the] podcast." Opp. at 1-3. All of which begs the question: Why are we here? Defendants ceased using the accused 2022 design elements weeks before the lawsuit was filed.[1] Because the Church has clarified the scope of its claims, it should at least be required to amend the Complaint accordingly.

The Church continues its effort to *falsely* paint Defendants as deceptive by *misrepresenting* MORMON STORIES episode 1678 and falsely claiming the guest "tells Mr. Dehlin … he believed Mormon Stories was Church-affiliated." Opp. at 2. There is a reason the Church *did not quote* the guest; he said no such thing. The guest actually said, "I … typed in Mormons, saw Mormon Stories, and I was like, perfect, stories about Mormons."[2] His first impression was *accurate*, and nothing he said suggests a belief the podcast was "Church-affiliated." The Church's insinuation that Mr. Dehlin named the podcast intending to suggest Church affiliation is a fabrication.[3]

---

[1] *See* Counterclaim ¶¶ 221-34 (ECF 42).
[2] *See* Episode 1678 at 1:36:10 (https://www.mormonstories.org/1678-tommy-madison-johnson/).
[3] Upon learning from a TikTok post that he was unexpectedly brought into this case by the Church, this guest expressed what was already clear from his 2022 interview—he "never once

Believing something is "about Mormons" is not a belief that it is "Church-affiliated." This improper conflation of uncertainty regarding the *content* of the podcast with uncertainty about who *sponsors* the podcast is a sleight-of-hand and error of law that underlies all the Church's claims. The ease with which the Church misrepresents facts to level accusations of deceptive intent at Mr. Dehlin is troubling and highlights concerns expressed by the Electronic Frontier Foundation about "the coercive power of dubious trademark claims." *See* ECF 70 at 8.

## ARGUMENT

## I. THE CHURCH'S TRADEMARK CLAIMS VIOLATE DEFENDANTS' FIRST AMENDMENT RIGHTS

### A. *Jack Daniel's* Does Not Preclude Defendants' First Amendment Defense

The Church cites *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) to argue the First Amendment is irrelevant here, because the MORMON STORIES name operates as Defendants' trademark. Opp. at 4-14. However, the Supreme Court recognizes that trademarks "often have an expressive content" conveying "powerful messages" properly protected by the First Amendment from enforcement of the Lanham Act. *Matal v. Tam*, 582 U.S. 218, 239 (2017). Just because trademarks can be a form of "commercial speech" does not mean they are subject to "a blanket exemption" from First Amendment protections. *Id*. at 251.

*Jack Daniel's* did *not* impose a blanket exemption from First Amendment protections to all trademark claims asserted against a term used as a trademark. Rather, the Supreme Court recognized that in "rare situations" the likelihood of confusion test will ***not*** do "enough work to account for the [Defendants'] interest in free expression" under the First Amendment. *Id*. at 159.

---

thought the show was from the Church itself." *See* https://www.tiktok.com/@analyzing.mormonism/video/7681399626968091917.

The unique and unprecedented facts of this case present such a situation, as evidenced by the Complaint allegations and other evidence subject to judicial notice.[4]

**First**, in 2018, the Church announced a *speech regulation* objective independent of trademark rights, wherein then President Russell Nelson declared that the term "Mormon" is offensive to the Church and God and *should not be used*. Ex. A, #7-8; Exs. E, F, G. Thus, the MORMON STORIES title stands *independently* as a non-commercial, First Amendment expression in defiance of that view.

**Second**, the Church combined this declaration with a wholesale *abandonment* of MORMON as a trademark, *see* Exs. E, F, H, acknowledging the decision would be "unwise" if it was about "branding a man-made organization," but that religious convictions override concerns about trademark rights. Ex. G. This "institutionalize[d]" rebranding reportedly included updating 300 web-based apps, acquiring 800 domain names, and renaming over 1,000 products including the Church's "biggest brands." Exs. I and J.

**Third**, the Church made no trademark objection to the MORMON STORIES podcast for two decades. *See* Motion at 17-20.

**Fourth**, the Church's belated enforcement efforts coincided with a change in leadership after President Nelson passed. In his first major address as President, just two months before the Complaint, Dallin Oaks warned Church members about "false information in podcasts." Ex. K.

Against this backdrop, the call for First Amendment protection looms large and demands heightened scrutiny to ensure the Church's enforcement of the Lanham Act does not constitute

---

[4] *See* Motion at 1, 4-5, n. 1 & 2. Like the articles cited in Exhibits A-B to the Motion, the news articles attached to this Reply as Exhibits E-K are properly the subject of judicial notice.

government-assisted viewpoint discrimination. *See Matal*, 582 U.S. at 251 (applying "heightened scrutiny" when action against a trademark is premised on "disagreement with the message it conveys"). The Church should not be permitted to wield federal trademark law to suppress a term the Church declared offensive and publicly abandoned as a trademark, regardless of any colorable claim of trademark infringement (which Defendants dispute). This case is unique and falls into the rare circumstances the Supreme Court alluded to in *Jack Daniel's*, wherein the First Amendment should override a trademark infringement claim even if the accused term is used as a trademark.

An injunction against Defendants' use of MORMON STORIES would employ governmental authority to suppress a religion-focused message that the Church finds offensive, does not want used in public discourse, and *no longer identifies as its brand*. The Court should dismiss Plaintiffs' trademark counts under the First Amendment.

**B. Plaintiffs' Claims Should be Dismissed under *Rogers* and *Stouffer***

The Church does not substantively address Defendants' arguments under *Stouffer*, *see* Opp. at 14 n. 4, leaving them unrebutted. *See* Motion at 7-11. As to the *Rogers* test, the Church contends that *Rogers* does not apply to claims against Defendants' use of certain design elements (*e.g.*, colors, fonts, images, etc.). *See* Opp. at 15. But Defendants' First Amendment defense is only asserted to the extent the Church seeks to enjoin the MORMON STORIES name itself.

The Church cites its *conclusory* Complaint allegations of deceptive intent as negating the "artistic relevance" factor under *Rogers*. *Id*. at 16. However, "deceptive intent must be pled with sufficient particularity," *Lutron Elecs. Co., Inc. v. Crestron Elecs., Inc.*, 2012 WL 3192806 at *4 (D. Utah, Aug. 6, 2012), and the Court need only accept "well-pleaded facts, as distinguished from

conclusory allegations," as true, *Moss v. Kopp*, 559 F.3d 1155, 1159, n.1 (10th Cir. 2009).[5] Indeed, the case the Church relies on *dismissed* the infringement claims under *Rogers*, recognizing the "artistic relevance" factor "is purposely low and will be satisfied unless the use 'has no artistic relevance to the underlying work whatsoever.'" *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F.Supp.2d 172, 178 (S.D.N.Y. 2012) (quoting *Rogers*).

The Church cites *Gordon v. Drape Creative Inc.*, 909 F.3d 257 (9th Cir. 2018) to argue that the "explicitly misleading" factor is too ambiguous at this stage. Opp. at 16-17. But *Gordon* recognized that "consumers 'do not expect [titles] to identify' the 'origin' of the work," and that when used "in the title of an expressive work … the mark obviously serve[s] as only one 'element' of the [work]'" and cannot be explicitly misleading. *Id.* at 270-71 (citing 6 McCarthy on Trademarks & Unfair Comp. ("McCarthy") § 31:144.50 ("[T]he deception or confusion must be relatively obvious and express, not subtle and implied.")). That is the case here; the MORMON STORIES name is only one element of the overall expressive content of the podcast. No part of Defendants' use of "Mormon" can be characterized as explicitly misleading.

Finally, the Church argues that Defendants' use of disclaimers is insufficient to *prevent confusion*. Opp. at 17-19. But the *Rogers* test asks whether Defendants' conduct is *explicitly* misleading, not whether Defendants sufficiently accommodated Plaintiffs' request for disclaimers. Allegedly inadequate disclaimers cannot reasonably be viewed as *explicitly* misleading, particularly where courts in the Tenth Circuit view disclaimers as negating confusion. *See, e.g., Klein-Becker USA, LLC v. Prod. Quest Mfg.*, 429 F. Supp. 2d 1248, 1258 (D. Utah 2005); *Univ.*

[5] The Church's only attempt to present factual allegations of deceptive intent is the *misleading* podcast citation in the Introduction of the Opposition. *See* Introduction, *supra*.

*of Kan. V. Sinks*, 565 F. Supp. 2d 1216, 1254 (D. Kan. 2008).

The tests under *Rogers* and *Stouffer* are satisfied and Plaintiffs' trademark claims should be dismissed on First Amendment grounds.

## II. PLAINTIFFS' TRADEMARK CLAIMS ARE BARRED BY LACHES

### A. Laches Is Established by the Complaint Allegations

Plaintiffs characterize laches as a "highly factual" defense that "generally cannot be resolved on a motion to dismiss," Opp. at 19, but gloss over the well-established authority that laches may be resolved at the pleading stage when, as here, the complaint alleges the factual basis for each element. *See* Motion at 15.

The Church ignores the facts[6] in its own Complaint that establish both elements of laches. For delay, the Complaint shows: Defendants have used MORMON STORIES since 2005 (Compl. ¶ 32); their use has been open and notorious on YouTube, Apple, Spotify, Amazon, TikTok, and Instagram (¶¶ 36-37); the Church waited *twenty years* before contacting Defendants (¶ 51, Ex. 5); and the Church is a sophisticated 200-year-old institution with 17 million members and, thus, properly charged with knowledge of Defendants' open use at or shortly after 2005 (¶¶ 14-15). For prejudice, the Complaint establishes: MORMON STORIES amassed 300,000 subscribers, created over 2,000 episodes, and was featured on Good Morning America, Newsweek, NPR, and The New York Times (¶ 41), Dehlin formed OSF in 2010 to advance the podcast's mission (¶ 32); and Defendants expanded onto national platforms and launched additional Mormon-themed podcasts (¶¶ 36-38). It is entirely appropriate to find that laches bars Plaintiffs' trademark claims at the

---

[6] In addition to the Complaint allegations, *all facts* provided in Defendants' Motion papers are properly before the Court. Motion at 4-5, n.1-2.

pleading stage.

**B. The Church's Twenty-Year Delay Is Inexcusable**

The Church does not deny it knew or should have known of Defendants' use of MORMON STORIES from the beginning. Instead, it relies on a progressive encroachment theory, arguing that design elements adopted in 2022 crossed the infringement line and excuse its decades-long delay. This theory does not save the Church's claims.[7]

**1. Defendants' activity was insufficient to reset the laches clock**

Progressive encroachment is sharply limited and does not provide a blanket excuse for the Church's egregious delay. Rather, it applies only where a junior user materially alters the nature or direction of its activity in a way that creates a new and distinct basis for infringement. *See, e.g.*, *Oriental Fin. Gp., Inc. v. Cooperativa de Ahorro Y Crédito Oriental*, 698 F.3d 9, 21–22 (1st Cir. 2012). Plaintiffs have not identified a material alteration here.

A defendant's "growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment." *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006) (rejecting progressive encroachment argument after a twenty-five year delay, finding defendant's label redesign and expanding sales channels to be "normal business growth, not progressive encroachment"); *see also Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 449 (3d Cir. 2024) (same; twelve-year delay barred injunctive relief); *Wisconsin Cheese Group, Inc. v. V & V Supremo Foods, Inc.*, 537 F. Supp. 2d

[7] The Church relies on Sixth Circuit law, *see* Opp. at 21 (citing *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837 (6th Cir. 2023)), and cites no authority showing the Tenth Circuit has ever adopted the progressive encroachment doctrine.

994, 1001–02 (W.D. Wis. 2008) (fourteen-year delay not excused by progressive encroachment despite increased sales and cosmetic brand modifications). Defendants' activity over twenty years fits squarely within the normal growth category and cannot excuse the Church's egregious delay. *See id*.

**2. Even if the clock resets in 2022, the Church's delay is inexcusable**

Even if the Court accepted Plaintiffs' theory that adopting the blue logo in 2022 reset the laches clock, Plaintiffs still waited three years before filing suit. That delay triggers the presumption of laches, which Plaintiffs do not rebut.[8]

**3. At minimum, laches bars claims against pre-2022 conduct**

The Church's progressive encroachment theory is premised on Defendants' conduct not ripening into actionable infringement until 2022. Opp. at 22. If so, Defendants' pre-2022 use of MORMON STORIES and other design elements was *not infringing* and is not actionable. *See, e.g.*, 4 McCarthy § 31:20 ("delay for laches is measured . . . from the date when infringement 'became actionable and provable.'"); *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000) ("Implicit in a finding of laches . . . is the presumption that an underlying claim for infringement existed at the time at which we begin to measure the plaintiff's delay."); *What A Burger of Va, Inc. v. Whataburger, Inc.*, 357 F.3d 441, 449 (4th Cir. 2004) ("[T]he court should be trying to determine the time at which the use became infringing and the time at which the owner

[8] Plaintiffs argue the Tenth Circuit has not adopted the presumption of laches based on the analogous limitations period. Opp. at 20, n.6. This Court, however, has recognized such a presumption and concluded the Tenth Circuit would do so if presented the opportunity. *See Albion Int'l, Inc. v. Am. Int'l Chem., Inc.*, No. 2:10-cv-00785, 2012 WL 3776866, at *4 (D. Utah Aug. 30, 2012).

should have known it."). This comports with the Church's concession that use of MORMON STORIES as the podcast title alone is not infringing. *See* Opp. at 1, 11, n.3. Accordingly, even if progressive encroachment allows claims against 2022 design elements, laches should still bar claims as to the MORMON STORIES name and all pre-2022 design elements.

**C. Defendants Have Suffered Substantial Prejudice**

Prejudice is established "when the defendant has expended substantial time and effort during the delay." *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014); *see also GTE Corp. v. Williams*, 649 F. Supp. 164, 176 (D. Utah 1986), *aff'd*, 904 F.2d 536 (10th Cir. 1990). Here, Defendants' prejudice goes far beyond "mere expenditures" as Plaintiffs downplay.[9] During the Church's twenty years of inaction, Defendants formed a nonprofit, created a family of MORMON podcasts, produced thousands of hours of content, cultivated an audience of hundreds of thousands, and achieved national media recognition. Compl. ¶¶ 32, 36–38, 41. Defendants built their professional and organizational identity around the MORMON STORIES name, which the Church knowingly allowed over two decades.

**D. Laches Bars Injunctive Relief in This Case**

Contrary to Plaintiffs' assertions, laches may bar both legal and *equitable* relief. *See, e.g., Kars 4 Kids*, 98 F.4th at 451; *Hot Wax*, 191 F.3d at 821; *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018). A grossly lengthy delay, such as 20 years, is often considered a "plus factor" justifying laches to "bar final injunctive relief." 4 McCarthy § 31:7

[9] Plaintiffs' reliance on *Hot Wax* is misplaced as it favors Defendants. The Seventh Circuit recognized that a twenty-year delay caused prejudice sufficient to support a laches defense. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999).

(citing cases); *Henderson v. Lindland*, 2013 WL 1181957, at *7 (C.D. Cal. Mar. 21, 2013) (citing McCarthy; delay of "over a decade" is a "plus factor" for laches barring injunction); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) (twenty-year delay barred all claims); *Hot Wax*, 191 F.3d 813 (same).[10]

### E. Plaintiffs' Willful Infringement Allegations Do Not Defeat Laches

Plaintiffs attempt to circumvent laches by alleging that Defendants willfully infringed their marks. But, as explained above, the Church's conclusory allegations of deceptive intent need not be accepted, and the Church's only attempt to present actual facts of willfulness was outside the Complaint and was itself misleading. *See* Introduction, Section I.B *supra*.[11]

## III. THE CHURCH SHOULD AMEND ITS PLEADED TRADEMARK THEORIES

The Opposition clarifies that "all Plaintiffs seek on their trademark claims" is "obtaining injunctive relief" and that its trademark claims are based solely on the adoption of certain design elements in 2022, *not* the MORMON STORIES title. Opp. at 1, 3, 21-23. The Complaint does not track these positions—it seeks trademark damages under § 1117 and to enjoin all use of "Defendants' Marks," including the title. Compl. ¶ 35, Prayer ¶ C. To ensure proper notice and

---

[10] Plaintiffs also suggest evidence of "strong" or "inevitable" confusion precludes laches. Opp. at 26. But the "inevitable confusion" exception requires proof that Defendant's service are "harmful or otherwise a threat to public safety," which Plaintiffs do not allege. *Tillamook*, 465 F.3d at 1111. And Plaintiffs' allegations of actual confusion, Compl. ¶ 54, even if believed, are de minimis considering 20 years of coexistence. *See Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1005 (10th Cir. 2014).

[11] Plaintiffs rely on inapposite cases, *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015), and *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999), for the proposition that willful infringers cannot invoke laches. But neither case holds that conclusory allegations of intent suffice to defeat laches. Plaintiffs also cite *Societe des Bains de Mer v. MGM Mirage*, 2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008), but that case considered specific factual allegations supporting deliberate copying—facts conspicuously absent from the Complaint here.

clarity, the Court should order the Church to amend the Complaint accordingly.

## IV. PLAINTIFFS' COPYRIGHT CLAIM SHOULD BE DISMISSED

Plaintiffs contend they need not provide allegations about the timing of alleged infringement, citing *After II Movie v. Wideopenwest Fin.*, 2025 WL 4696630 (D. Colo. Mar. 14, 2025). But the complaint in *After II* had such allegations and even cited the plaintiffs' demand letters specifying "the time of infringement down to the second." *Id.* at *4. The Court should accept Plaintiffs' offer, *see* Opp. at 32, and order Plaintiffs to amend the Complaint to include the requisite factual allegations regarding the timing of the alleged infringement.

## CONCLUSION

Defendants respectfully move the Court to dismiss Counts I-IV of the Complaint.

Dated: September 21, 2026

Respectfully submitted,

*/s/ Mark A. Miller*

Mark A. Miller
Elliot Hales
Olivia McQuarrie
Mike Keyes
**Dorsey & Whitney, LLP**

Elissa Brockbank Reese
**Potomac Law Group, PLLC**

Ryan E. Hatch
**Hatch Law, PC**

*Attorneys for Defendants Open Stories Foundation and John P. Dehlin*

**CERTIFICATION UNDER D.U.CIV.R. 7-1(a)(6)**

I, Mark A. Miller, certify that this **Reply in Further Support of Motion to Dismiss** contains 3,094 words and complies with DUCivR 7-1(a)(4).

*/s/ Mark A. Miller*
Mark A. Miller