# EXHIBIT M

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

ESTTA Tracking number: **ESTTA1241325**

Filing date: **10/12/2022**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

# Notice of Opposition

Notice is hereby given that the following parties oppose registration of the indicated application.

## Opposers information

| | |
|---|---|
| Name | Intellectual Reserve, Inc. |
| Granted to date of previous extension | 10/12/2022 |
| Address | 50 EAST NORTH TEMPLE<br>SALT LAKE CITY, UT 84150<br>UNITED STATES |

| | |
|---|---|
| Name | The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole |
| Granted to date of previous extension | 10/12/2022 |
| Address | 50 EAST NORTH TEMPLE<br>SALT LAKE CITY, UT 84150<br>UNITED STATES |

| | |
|---|---|
| Attorney information | MICHAEL A. GROW<br>ARENTFOX SCHIFF LLP<br>1717 K STREET, NW<br>WASHINGTON, DC 20006<br>UNITED STATES<br>Primary email: michael.grow@afslaw.com<br>Secondary email(s): elizabeth.cohen@afslaw.com, zachary.smith@afslaw.com, tmdocket@afslaw.com, teresa.myers@afslaw.com<br>202-857-6000 |
| Docket no. | 019526.00029 |

## Applicant information

| | | | |
|---|---|---|---|
| Application no. | 90875090 | Publication date | 06/14/2022 |
| Opposition filing date | 10/12/2022 | Opposition period ends | 10/12/2022 |
| Applicant | Heathertainment, Inc.<br>5496 S 900 E<br>MURRAY, UT 84117<br>UNITED STATES | | |

## Goods/services affected by opposition

| |
|---|
| Class 021. First Use: None First Use In Commerce: None<br>All goods and services in the class are opposed, namely: Mugs; Bottle openers; Beer mugs; Coffeemugs; Drinking bottles for sports; Plastic water bottles sold empty; Sports bottles sold empty; Squeeze bottles sold empty; Travel mugs |

| |
|---|
| Class 025. First Use: None First Use In Commerce: None<br>All goods and services in the class are opposed, namely: Clothing, namely, shirts, sweaters, hats, scarfs, pants, shorts, socks, shoes, tank tops, jackets, coats, sweat pants, sweat shorts, sweat jackets, and sweat shirts |
| Class 041. First Use: None First Use In Commerce: None<br>All goods and services in the class are opposed, namely: Entertainment services, namely, providing podcasts in the field of religion, gossip, education, personal growth, current events, and social issues |

## Grounds for opposition

| | |
|---|---|
| Priority and likelihood of confusion | Trademark Act Section 2(d) |
| Dilution by blurring | Trademark Act Sections 2 and 43(c) |
| Dilution by tarnishment | Trademark Act Sections 2 and 43(c) |
| False suggestion of a connection with persons, living or dead, institutions, beliefs, or national symbols | Trademark Act Section 2(a) |
| Deceptiveness | Trademark Act Section 2(a) |

## Marks cited by opposer as basis for opposition

| | | | |
|---|---|---|---|
| U.S. registration no. | 5020314 | Application date | 06/24/2015 |
| Register | Principal | | |
| Registration date | 08/16/2016 | Foreign priority date | NONE |
| Word mark | MORMON MESSAGES | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: Jan 1, 2009 First Use In Commerce: Jan 1, 2009<br>Digital materials, namely, DVDs and downloadable video recordings featuring religious, inspirational, motivational, andself-improvement topics provided online, and downloadable videos featuring messages about values and principles important to society provided online<br>Class 041. First use: First Use: Jan 1, 2009 First Use In Commerce: Jan 1, 2009<br>Educational and entertainment services,namely, providing messages via on-line non-downloadable videos about values andprinciples important to society | | |

| | | | |
|---|---|---|---|
| U.S. registration no. | 5020309 | Application date | 06/23/2015 |
| Register | Principal | | |
| Registration date | 08/16/2016 | Foreign priority date | NONE |
| Word mark | MORMON CHANNEL | | |

| | |
|---|---|
| Design mark | MORMON CHANNEL |
| Description of mark | NONE |
| Goods/services | Class 038. First use: First Use: May 18, 2009 First Use In Commerce: May 18, 2009<br>[ Radio broadcasting services; webcasting services; streaming of audio, visual and data information via a global computer network, mobile applications or oth-erelectronic or digital communications network or digital communications device ]<br>Class 041. First use: First Use: May 18, 2009 First Use In Commerce: May 18, 2009<br>Entertainment and educational services,namely, providing continuing audio and video programs featuring music, talk, news, and religious data via a global com-puter network, mobile applications or other electronic or digital communications network or digital communications |

| | | | |
|---|---|---|---|
| U.S. registration no. | 3715744 | Application date | 05/11/2007 |
| Register | Principal | | |
| Registration date | 11/24/2009 | Foreign priority date | NONE |
| Word mark | MORMON.ORG | | |
| Design mark | MORMON.ORG | | |
| Description of mark | NONE | | |
| Goods/services | Class 041. First use: First Use: Oct 31, 2001 First Use In Commerce: Oct 31, 2001<br>Providing information and instruction in the fields of religion, ethics, and moral and religious values; providing on-line religious instruction promoting family val-ues; providing information in the field of parenting concerning education and en-tertainment of children; and providing courses of instruction in the fieldof marital relations | | |

| | | | |
|---|---|---|---|
| U.S. registration | 3239919 | Application date | 09/05/2002 |

| | | | |
|---|---|---|---|
| no. | | | |
| Register | Principal | | |
| Registration date | 05/08/2007 | Foreign priority date | NONE |
| Word mark | MORMON | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 041. First use: First Use: 1920 First Use In Commerce: 1920<br>Educational services, namely, providingclasses, conferences, and institutes inthe fields of history and religion<br>Class 042. First use: First Use: Jun 1, 1833 First Use In Commerce: Jun 1, 1833<br>genealogy services | | |

| | | | |
|---|---|---|---|
| U.S. registration no. | 2883572 | Application date | 05/10/2002 |
| Register | Principal | | |
| Registration date | 09/14/2004 | Foreign priority date | NONE |
| Word mark | BOOK OF MORMON | | |
| Design mark | BOOK OF MORMON | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: 1977 First Use In Commerce: 1977<br>pre-recorded audio and video cassette tapes and compact discs featuring religious content<br>Class 016. First use: First Use: 1830 First Use In Commerce: 1830<br>Printed matter; namely religious books,religious instructional pamphlets, and brochures; photographs, artist materials, instructional and teaching material, posters, engravings, prints of paintings,books | | |

| | | | |
|---|---|---|---|
| U.S. registration no. | 2913694 | Application date | 04/10/2003 |
| Register | Principal | | |
| Registration date | 12/21/2004 | Foreign priority date | NONE |
| Word mark | MORMON TABERNACLE CHOIR | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: Mar 2003 First Use In Commerce: Mar 2003<br>prerecorded [ audiotapes, videotapes,] compact discs, and digital video discs | | |

| | |
|---|---|
| | featuring musical entertainment incorporating religious, family, and educational themes<br>Class 016. First use: First Use: Jun 2003 First Use In Commerce: Jun 2003<br>publications, namely, books featuring musical performances and featuring religious, family, and educational themes<br>Class 041. First use: First Use: Mar 2003 First Use In Commerce: Mar 2003<br>entertainment services, namely, live performances by a musical performance group |

| | | | |
|---|---|---|---|
| U.S. registration no. | 2766231 | Application date | 11/20/2001 |
| Register | Principal | | |
| Registration date | 09/23/2003 | Foreign priority date | NONE |
| Word mark | MORMON TABERNACLE CHOIR | | |
| Design mark | MORMON TABERNACLE CHOIR | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: Nov 1973 First Use In Commerce: Nov 1973<br>Pre-recorded audio and audio-video [ cassette tapes and ] compact discs featuring musical entertainment incorporating religious, family, and educational themes<br>Class 041. First use: First Use: Aug 1893 First Use In Commerce: Aug 1893<br>entertainment services, namely, live performances by a musical performance group | | |

| | |
|---|---|
| Attachments | 86671463#TMSN.png( bytes )<br>77179068#TMSN.png( bytes )<br>76405608#TMSN.png( bytes )<br>76340212#TMSN.png( bytes )<br>Notice of Opposition - Intellectual Reserve and Church of Jesus Chris t of Latter-day Saints v. Heathertainment Inc. - BAD MORMON SN 90875090 (3).pdf(161759 bytes ) |

| | |
|---|---|
| Signature | /Michael A. Grow/ |
| Name | Michael A. Grow |
| Date | 10/12/2022 |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In re Application No. 90875090 for the mark BAD MORMON

| | |
|---|---|
| INTELLECTUAL RESERVE, INC.<br><br>and<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS<br><br>Opposers<br><br>v.<br><br>HEATHERTAINMENT, INC.<br><br>Applicant | Opp. No. _______ |

**NOTICE OF OPPOSITION**

Opposers Intellectual Reserve, Inc. and The Church of Jesus Christ of Latter-day Saints believe that they will be damaged by the registration of the above identified mark and hereby oppose the same under the provisions of Section 13 of the Trademark Act of 1946, 15 U.S.C. § 1063.

As grounds for the opposition, Opposers allege the following.

1. Intellectual Reserve, Inc. ("IRI") is a nonprofit corporation organized under the laws of the state of Utah having a principal place of business at 50 East North Temple, Salt Lake City, Utah 84150.

2. The Church of Jesus Christ of Latter-day Saints ("CHC") is a Utah corporation sole having a principal place of business at 50 East North Temple, Salt Lake City, Utah 84150.

3. The religious organization known as The Church of Jesus Christ of Latter-day Saints (the "Church")(not the corporation sole CHC) was organized in 1830 shortly after the publication of the Book of Mormon by the Church's founder Joseph Smith.

4. The Church is a community of people who believe that the Bible and the Book of Mormon are sacred scriptures containing the word of God, and they share the same religious doctrine, practice the same religious rites and ordinances, and are governed by the same ecclesiastical principles.

5. The Church has approximately 17 million members in over 31,000 congregations worldwide and. Church membership within the United States currently totals nearly 7 million.

6. IRI owns and manages intellectual property used by the Church and its affiliated legal entities, including CHC. (IRI, CHC, and their affiliates and predecessors are collectively referred to herein as "Opposer").

7. Opposer has established common law trademark and trade name rights in and is the owner of all right, title, and interest in and to the mark MORMON, which is part of a family of marks containing the word MORMON ("Opposer's MORMON Marks").

8. The Patent and Trademark Office has recognized Opposer's ownership rights and exclusive right to use many of the MORMON Marks by issuing the following registrations among others:

- Reg. No. 5020314, **MORMON MESSAGES**, issued August 16, 2016;
- Reg. No. 5020309, **MORMON CHANNEL**, issued August 16, 2016;
- Reg. No. 3715744, **MORMON.ORG**, issued on November 24, 2009;
- Reg. No. 3239919, **MORMON**, issued May 8, 2007;
- Reg. No. 2883572, **BOOK OF MORMON**, issued September 14, 2004;
- Reg. No. 2913694, **MORMON TABERNACLE CHOIR**, issued on December 21, 2004; and
- Reg. No. 2766231, **MORMON TABERNACLE CHOIR**, issued September 23, 2003.

9. The foregoing registrations are valid and subsisting, and some are incontestable. Thus, they provide prima facie and conclusive evidence of Opposer's ownership of and exclusive right to use Opposer's MORMON Marks in commerce.

10. Opposer's MORMON Marks have been used continuously since at least as early as the respective dates of first use listed in the registrations.

11. Since long prior to the filing date of Applicant's BAD MORMON application, or any date of first use that Applicant may allege, Opposer's MORMON Marks have been the subject of extensive publicity and advertising, and Opposer has used the MORMON Marks in interstate and foreign commerce in connection with a variety of goods and services, including the sale of clothing.

12. Many people, including Church members and members of the media, refer to the Church as the "Mormon Church" even though the official name is The Church of Jesus Christ of Latter-day Saints.

13. Opposer's MORMON Marks are derived from the name of an ancient prophet who compiled and created an abridgement of many historical and religious records that now comprise The Book of Mormon which, along with the Bible, is regarded as a work of scripture and a source of knowledge about God and Jesus Christ.

14. The fame of the MORMON Marks is due in part to the fact that they have been used in connection with the performances, sound recordings and radio, televisions and streaming broadcasts of the 360 member tabernacle choir which have been disseminated weekly since 1929 from Temple Square in Salt Lake City, Utah, making this the longest continuing network broadcast in history.

15. Opposer's MORMON Marks also have become famous due to the fact that presidential candidates and many other prominent politicians, athletes, entertainers, artists, and writers are Church members, and these individuals frequently have been and are identified in the media as members of the "Mormon Church."

16. Even though Opposer has emphasized and encouraged use of its official name, Opposer has never abandoned its MORMON Marks, and these marks are used in connection with a wide variety goods and services offered to adults and younger people.

17. Because of their extensive advertising, publicity, and use, Opposer's MORMON Marks have become strong and famous, and they are entitled to a broad scope of protection.

18. For nearly 200 years, Opposer's MORMON Marks have been used extensively to identify and distinguish Opposer's goods and services and its doctrines and religious beliefs, which usage has been reported in numerous news articles and other publications; and this has caused the public to associate the mark MORMON and Opposer's other MORMON Marks with Opposer.

19. Opposer's MORMON Marks have become well-known and famous as symbols of the extensive goodwill and consumer recognition built up by Opposer through the substantial expenditure of time and resources in promotion and advertising.

20. Opposer has also used its MORMON Marks in connection with downloadable and non-downloadable videos covering a wide range of topics; providing information, and services via Internet websites; streaming of audio, visual and data information via the Internet, mobile applications or other electronic or digital communications networks and devices; publications, including books, pamphlets, photographs, instructional and teaching material, posters and prints of paintings; pre-recorded audio and audio video discs, entertainment services, textiles and other merchandise.

21. Opposer has released a series of streaming videos under the mark BOOK OF MORMON VIDEOS, which are intended for viewing by people of all ages, and which have been widely publicized. See https://www.churchofjesuschrist.org/media/collection/book-of-mormon-videos-feature?lang=eng;

22. Opposer has established common law rights in the mark I'M A MORMON, which has been used with a series of videos featuring people of all ages who are members of the Church and who share details about their everyday lives and their deep commitment to Jesus Christ.

23. On August 10, 2021, Applicant filed an intent to use application, Serial No. 90875090, seeking registration of the alleged mark BAD MORMON for "*Mugs; Bottle openers; Beer mugs; Coffee mugs; Drinking bottles for sports; Plastic water bottles sold empty; Sports bottles sold empty; Squeeze bottles sold empty; Travel mugs* in class 21; *Clothing, namely, shirts, sweaters, hats, scarfs, pants, shorts, socks, shoes, tank tops, jackets, coats, sweat pants, sweat shorts, sweat jackets, and sweat shirts* in Class 25;*"* and *Entertainment services, namely, providing podcasts in the field of religion, gossip, education, personal growth, current events, and social issues "*in Class 41 and Applicant declared under penalty of perjury it was the owner of the mark and that no other person had the right to use the mark or any similar mark.

24. On information and belief, Applicant made no use of its alleged mark in commerce prior to the filing date of its intent to use application.

25. On information and belief, Applicant's mark was adopted with an intent to cause confusion, tarnishment and dilution and to falsely suggest a connection or affiliation with or approval or endorsement by Opposer or the Church.

26. On information and belief, Applicant was aware of Opposer's MORMON Marks when Applicant began using and applied to register its alleged mark.

27. Applicant Heathertainment, Inc. is a Utah corporation, for which Heather Gay is listed as the Registered Agent and is presumably at least one of the founders and principals of Applicant.

28. On information and belief, Applicant's registered agent participated in the filing of other applications for marks containing Opposer's Mark including REAL MORMON and MORMON ROYALTY, and the Trademark Trial and Appeal Board sustained Opposer's oppositions to both of these applications.

## I. LIKELIHOOD OF CONFUSION - §2(d)

29. As a separate ground for this opposition, Opposer alleges that Applicant's mark is likely to cause confusion, mistake or deception with Opposer's MORMON MARKS within the meaning of Section 2(d) of the Trademark Act. Paragraphs 1 through 28 of this Notice of Opposition are incorporated by reference as part of this count.

30. The mark that Applicant seeks to register is identical to or so resembles Opposer's MORMON Marks that the use and registration thereof is likely to cause confusion, mistake, and deception as to the source or origin of Applicant's goods, and it will injure and damage Opposer and the goodwill and reputation symbolized by Opposer's MORMON Marks.

31. Likelihood of confusion is not diminished by Applicant's use of the word "bad" since the teachings of Opposer are directed to all persons good and bad and one of its primary religious beliefs is that those who have committed bad acts can be redeemed through repentance and adherence to those teachings.

32. Any goods bearing the alleged mark BAD MORMON are likely to pass through the same or similar channels of commerce to the same or similar classes of customers as the goods and services offered in connection with Opposer's MORMON Marks.

33. Applicant's alleged mark BAD MORMON, as applied to the goods and services identified in its application, so resembles Opposer's MORMON Marks as to be likely to cause confusion mistake, or to deceive, or to falsely suggest a connection with Opposer, or dilute the distinctive quality of Opposer's famous MORMON Marks.

34. Likelihood of confusion is enhanced in this case by the fame of Opposer's MORMON Marks and by the fact that consumers associate Opposer's MORMON Marks with goods and services sold, approved, or endorsed by Opposer.

35. Likelihood of confusion may be presumed in this case in light of the fact that Applicant obviously adopted an imitation of Opposer's MORMON Marks with prior knowledge of said marks and with an intent to cause confusion and to capitalize on the popularity of Opposer's MORMON Marks.

36. Because Applicant's mark is likely to cause confusion, mistake, or deception, Opposer will be damaged if the mark is registered, and registration of Applicant's mark should be denied pursuant to Section 2(d).

**II. FALSE SUGGESTION OF CONNECTION - §2(a)**

37. As a separate ground for this opposition, Opposer alleges that Applicant's mark falsely suggests a connection with Opposer or its institutions and beliefs within the meaning of Section 2(a) of the Trademark Act. Paragraphs 1 through 36 of this Notice of Opposition are incorporated by reference as part of this count.

38. Applicant's alleged mark so closely resembles Opposer's MORMON Marks that it falsely suggests a connection with Opposer or its institutions and beliefs in violation of Section 2(a) of the Trademark Act, because Applicant's alleged mark points uniquely to Opposer or its identity and purchasers will mistakenly assume that goods sold under Applicant's alleged mark are connected with Opposer.

39. Opposer is not connected with the activities performed by Applicant or the goods or services that Applicant intends to sell under its alleged mark.

40. The fame and reputation of Opposer and its MORMON Marks is such that, when Applicant's alleged mark is used with the goods or services listed in its application, a connection with Opposer or its institutions or beliefs will be presumed.

41. When Applicant's alleged mark is used on goods of the type described in the opposed application, purchasers will mistakenly assume that Opposer is endorsing, attempting to promote, or encouraging the sale of Applicant's goods by permitting the alleged mark to be used on such goods.

42. Applicant's alleged mark is the same as, or is a close approximation of, the name or identity of Opposer, which is often used by others to refer to Opposer.

43. Applicant's mark would be recognized as such, in that it points uniquely and unmistakably to Opposer and its institutions and beliefs.

44. Further evidence of Applicant's attempt to falsely suggest a connection with Opposer may be found in the fact that Applicant is seeking registration for service in Opposer's filed of operation, namely, "providing podcasts in the field of religion."

45. Applicant's alleged mark also suggests a connection with Opposer's beliefs, many of which are contained in The Book of Mormon.

46. Because Applicant's alleged mark falsely suggests a connection with Opposer, Opposer will be damage and registration should be denied.

**III DECEPTION -§ 2(a)**

47. As a separate ground for this opposition, Opposer alleges that Applicant's mark is deceptive within the meaning of Section 2(a) of the Trademark Act. Paragraphs 1 through 46 of this Notice of Opposition are incorporated by reference as part of this count.

48. Applicant's alleged mark is deceptive, false and misleading in that it falsely represents that Applicant has a connection with Opposer or with Opposer's institutions or beliefs or that Applicant is approved or endorsed by Opposer.

49. Applicant's use of the generic word "bad" is deceptive in that it falsely represents that Opposer, the Church or its members are bad or otherwise behaving immorally or contrary to the teachings of the Church.

50. Applicant has enhanced the deceptive nature of its alleged mark and its goods and services with an intent to advance its false suggestion of connection or by conveying stories of alleged former or existing members of the Church behaving immorally, badly or otherwise contrary to the teachings of the Church

51. Applicant's false representations are material in that they mispresent the nature of the Parties' goods and services and explicitly or implicitly state that Applicant's goods or services are of value to a Church member who is bad or in need of assistance in correcting his or her bad

behavior or that Opposer, the Church or its members are bad or otherwise behaving immorally or contrary to the teachings of the Church.

52. Use and registration of the mark BAD MORMON by Applicant will deprive Opposer of the ability to protect its reputation, persona, and goodwill.

53. Because of the deceptive nature of the mark sought to be registered by Applicant, Opposer and the goodwill symbolized by its MORMON Marks will be damaged in a cognizable way and registration of Applicant's alleged mark should be denied.

**IV. DILUTION BY BLURRING AND TARNISHMENT - §§ 2 & 43(c)**

54. As a separate ground for this opposition, Opposer alleges that Applicant's mark is likely to cause dilution by blurring or tarnishment of Opposer's famous MORMON Marks within the meaning of Sections 2 and/or 43(c) of the Trademark Act. Paragraphs 1 through 53 of this Notice of Opposition are incorporated by reference as part of this count.

55. Opposer's MORMON Marks became well-known and famous long before Applicant made any use of its alleged BAD MORMON mark and before Applicant filed any application to register its alleged mark.

56. The alleged mark shown in Applicant's application will cause dilution of the distinctive quality of Opposer's MORMON Marks.

57. Use or registration of Applicant's alleged mark will lessen the capacity of Opposer's famous MORMON Marks to identify and distinguish Opposer's goods and services.

58. Likelihood of confusion, dilution and deception is enhanced by the fact that Applicant's alleged mark is virtually identical to Opposer's MORMON Marks.

59. Use and registration of the alleged mark by Applicant will deprive Opposer of the ability to protect its reputation, persona and goodwill.

60. Applicant's use or registration of BAD MORMON will tarnish and denigrate Opposer, the Church, its leaders, its members, its teachings and beliefs, and will otherwise bring Opposer Church into contempt and disrepute in connection with the goods and services listed in Applicant's application will tarnish the goodwill symbolized by Opposer's MORMON Marks.

61. Likelihood of tarnishment and damage to Opposer's goodwill is enhanced by the fact that Opposer has no control over the nature and quality of any goods or services sold under Applicant's alleged mark, and prospective customers who encounter defects in the quality of Applicant's goods or services will attribute those defects to Opposer and this will further tarnish Opposer's goodwill.

62. Because Applicant's mark is likely to dilute Opposer's famous MORMON Marks by blurring and tarnishment, Opposer will be damaged if the mark is registered, and registration of Applicant's mark should be denied pursuant to Sections 2 and/or 43(c).

WHEREFORE, Opposer requests that this opposition be sustained and that registration be denied.

Respectfully submitted

INTELLECTUAL RESERVE, INC.

and

THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS

By: /s/ Michael A. Grow

Michael A. Grow
Elizabeth H. Cohen
Zachary D. Smith
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6000

Attorneys for Opposers